**FAEGRE DRINKER BIDDLE & REATH LLP**
JOSHUA E. ANDERSON (SBN 211320)
*josh.anderson@faegredrinker.com*
DAVID A. BELCHER (SBN 330166)
*david.belcher@faegredrinker.com*
KAYLEE A. RACS (SBN 353919)
*kaylee.racs@faegredrinker.com*
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone:  +1 310 203 4000
Facsimile:   +1 310 229 1285

Attorneys for Defendant
DAVITA INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR SANCHEZ, an individual and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAVITA INC. a Delaware corporation; MARTHA TASHJIAN, an individual; SHELLY MARTINEZ, an individual; and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No. 2:25-cv-10742<br><br>(Removed from the Los Angeles County Superior Court Case No. 25STCV29466)<br><br>**DEFENDANT DAVITA INC.'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**<br><br>[Filed Concurrently with Civil Cover Sheet, Declaration of Joshua E. Anderson, and Notice of Interested Parties]<br><br>Complaint filed: October 8, 2025<br>Date removed:    November 7, 2025 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA:**

Defendant DaVita Inc. ("DaVita,"), by and through its counsel, hereby removes the above-entitled action (the "State Court Action") from the Superior Court of California, County of Los Angeles, to the United States District Court for the Central District of California. Pursuant to 28 U.S.C. §§ 1332(a), 1332(d), 1441, and 1446, as amended in relevant part by the Class Action Fairness Act of 2005 ("CAFA"), removal of the State Court Action, which was originally filed in the Superior Court for the State of California, County of Los Angeles, and assigned Case No. 25STCV29466, is warranted.

In support of its Notice of Removal, DaVita states and alleges as follows:

## I.    **INTRODUCTION**

1.      On or about October 8, 2025, Plaintiff Victor Sanchez ("Plaintiff") filed the State Court Action against DaVita in the Los Angeles County Superior Court.

2.      Copies of all process, pleadings, and orders filed in the State Court Action are attached hereto as **Exhibit A**, as required by 28 U.S.C. § 1446(a).

3.      The Complaint alleges that DaVita improperly coerced Plaintiff and other patients to receive their life-sustaining dialysis treatments at home (via, most typically, a procedure known as peritoneal dialysis ("PD"), a dialysis modality that patients perform in their homes), as opposed to at DaVita clinics (via, typically, a procedure known as in-center hemodialysis ("ICHD")), and failed to adequately disclose the risks of home dialysis modalities, such as PD, to these patients. Compl. ¶ 1. The Complaint further alleges that DaVita engaged in this purported "scheme" because home modalities are more profitable to DaVita. *Id.*

4.      Plaintiff alleges that DaVita employees, including Martha Tashjian and Shelly Martinez (collectively, the "Individual Defendants"), were "directed" by DaVita to "use their sales backgrounds to drive up the number of patients placed on"

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

PD treatment. *Id.* ¶¶ 5–6, 22–23. Plaintiff further alleges that, "at all material times," the Individual Defendants were "acting within the purpose and scope of . . . [their] employment." *Id.* ¶ 9. Plaintiff does not, however, allege that he ever *interacted* with either of the Individual Defendants—much less that either of the Individual Defendants ever made any misrepresentations to him or ever concealed any information from him. *See id.* ¶¶ 23–30.

5.      Plaintiff alleges that he was diagnosed with kidney cancer in 2015 and subsequently underwent surgery to remove one of his kidneys. *Id.* ¶ 44. As a result, he required dialysis. *Id.* Plaintiff alleges that shortly after he visited an unnamed DaVita clinic in 2024, he was pressured by unnamed persons to switch from ICHD to PD. *Id.* ¶¶ 20, 44–45. As a result of receiving PD, Plaintiff alleges, among other things, that he was required to undergo surgery to correct a catheter, experienced exhaustion, back, and muscle pain, and contracted peritonitis. *Id.* ¶¶ 55–60.

6.      Based on these allegations, Plaintiff asserts claims for:  (1) negligence; (2) unfair competition (Cal. Bus. & Prof. Code § 17200); (3) false advertising (Cal. Bus. & Prof. Code § 17500); (4) concealment; (5) intentional misrepresentation; (6) negligent misrepresentation; and (7) breach of fiduciary duty. Compl. ¶¶ 76–126. Plaintiff asserts all seven causes of action against DaVita, but only asserts the second, third, fifth, and sixth causes of action against the Individual Defendants. *Id.*

7.      The Complaint names DaVita and the Individual Defendants, along with fictitious "Doe" defendants.

8.      To the best of DaVita's knowledge, the Individual Defendants have not yet been served with the Complaint. Declaration of Joshua E. Anderson ("Anderson Decl.") ¶ 3.

## II.    <u>REMOVAL IS TIMELY</u>

9.      DaVita's notice of removal is timely. Under 28 U.S.C. § 1446(b), "[e]ach defendant shall have 30 days after . . . service on that defendant of the initial

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

DEFENDANT DAVITA INC.'S NOTICE OF REMOVAL
Case No.: 2:25-cv-10742

1    pleading or summons . . . to file the notice of removal." Here, DaVita was served on

2    October 10, 2025. Anderson Decl. ¶ 2.

3        10.    As a result, DaVita's deadline to remove this case is November 10,

4    2025. 28 U.S.C. § 1446(b); Fed. R. Civ. P. 6(a)(1). DaVita timely filed this notice of

5    removal on November 7, 2025, within thirty days of service.

6    **III.    THIS COURT HAS SUBJECT MATTER JURISDICTION BASED ON**

7    **DIVERSITY, 28 U.S.C. § 1332(a)(1), AND, ALTERNATIVELY, UNDER**

8    **THE CLASS ACTION FAIRNESS ACT OF 2005, 28 U.S.C. § 1332(d)(2).**

9        11.    The State Court Action is removable pursuant to 28 U.S.C. § 1441,

10   which permits removal of "any civil action brought in a State court of which the

11   district courts of the United States have original jurisdiction," 28 U.S.C. § 1441(a),

12   for two independent reasons. ***First***, the State Court Action is removable under 28

13   U.S.C. § 1332(a)(1), which permits removal of "civil actions where the matter in

14   controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and

15   is between citizens of different states." ***Second***, the State Court Action is removable

16   under CAFA, 28 U.S.C. § 1332(d), which grants United States District Courts

17   original jurisdiction over, and permits removal of, class actions in which: (i) any

18   member of a class of plaintiffs is a citizen of a State different from any defendant

19   ("minimal diversity"); (ii) the defendant is not a governmental entity; (iii) the

20   proposed class contains at least 100 members; and (iv) the matter in controversy

21   exceeds $5,000,000, exclusive of interests and costs.

22       12.    "[N]o antiremoval presumption attends cases invoking CAFA . . . in part

23   because the statute was enacted to facilitate adjudication of certain class actions in

24   federal court." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F. 4th 989, 992–93

25   (9th Cir. 2022).

26       13.    As set forth below, this case meets all the requirements for both diversity

27   jurisdiction and CAFA jurisdiction.

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

DEFENDANT DAVITA INC.'S NOTICE OF REMOVAL
Case No.: 2:25-cv-10742

### A. This Court Has Diversity Jurisdiction Over the State Court Action Pursuant to 28 U.S.C. § 1332(a)(1).

#### i. Plaintiff and DaVita are Completely Diverse.

14. Plaintiff is a citizen of a different state than DaVita.

15. Plaintiff alleges that he is a citizen of California. Compl. ¶ 3.

16. DaVita is a Delaware corporation, whose principal place of business is in Colorado. Anderson Decl. ¶ 4, Ex. A.

17. Accordingly, DaVita is a citizen of Delaware and Colorado for the purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c); 28 U.S.C. § 1332(d)(10); *see also Jack v. Ring LLC*, 553 F. Supp. 3d 711, 714 (N.D. Cal. 2021).

#### ii. The Individual Defendants were Fraudulently Joined.

18. Although Plaintiff alleges that the Individual Defendants are also citizens of California, Compl. ¶¶ 5–6, both of them were "fraudulently joined" to attempt to defeat federal diversity jurisdiction.

19. The doctrine of "fraudulent joinder" permits courts to ignore allegations against a non-diverse party "if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F. 3d 1061, 1067 (9th Cir. 2001) (citing *McCabe v. General Foods Corp.*, 811 F. 2d 1336, 1339 (9th Cir. 1987)). A plaintiff fails to state a claim against a resident defendant when "there is no reasonable basis for imposing liability on the resident defendant." *TPS Utilicom Servs. Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1102 (C.D. Cal. 2002). Additionally, a defendant "is entitled to present the facts showing the joinder to be fraudulent." *Morris*, 236 F. 3d at 1067.

20. Where claims are brought against individuals on the "sole basis" that they were "performing duties within the scope of [their] employment," their joinder is unnecessary and inappropriate, and a case may be properly removed on diversity

1    grounds. *Rojas by and through Rojas v. Sea World Parks & Entertainment, Inc.*, 538
2    F. Supp. 3d 1008, 1025–26 (S.D. Cal. 2021) (finding that employers are required "to
3    defend or indemnify an employee who is sued by third persons for conduct in the
4    course and scope of his employment"); *Goldsmith v. CVS Pharmacy, Inc.*, No. CV
5    20-00750-AB (JCx), 2020 WL 1650750, at *5 (C.D. Cal. Apr. 3, 2020) (same).

6        21.    This Court's decision in *Calderon v. Lowe's Home Centers, LLC*, is
7    instructive. There, plaintiff, a California resident, sued Lowe's, a North Carolina
8    corporation, and the manager of the Lowe's store where plaintiff was allegedly
9    injured, a California resident. No. 2:15-CV-01140-ODW, 2015 WL 3889289, at *1
10   (C.D. Cal. June 24, 2015). Lowe's removed the case from the Los Angeles Superior
11   Court to this Court. *Id.* Plaintiff moved to remand, arguing that the manager's
12   presence as a defendant destroyed complete diversity. *Id.* This Court denied
13   plaintiff's remand motion, holding that plaintiff's joinder of the manager was
14   fraudulent because, among other reasons, plaintiff's complaint contained "no
15   allegations of actions by [the manager] outside of the scope of his employment, or
16   any basis for distinguishing him from [Defendant Lowe's]." *Id.* at *4–5.

17       22.    Plaintiff has alleged four claims against the Individual Defendants: (1)
18   violations of California's Unfair Competition Law ("UCL"); (2) violations of
19   California's False Advertising Law ("FAL"); (3) intentional misrepresentation; and
20   (4) negligent misrepresentation. Compl. ¶¶ 84–95, 105–121. Plaintiff's UCL and
21   FAL claims require Plaintiff to plead that the Individual Defendants made actionable
22   misrepresentations or omissions. *Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*,
23   691 F. Supp. 3d 1113, 1118 (N.D. Cal. 2023) (citation omitted). Those claims also
24   require plaintiffs to plead reliance on those misrepresentations or omissions. *Id.* at
25   1119. Similarly, negligent and intentional misrepresentation claims require plaintiffs
26   to plead, among other elements, "a misrepresentation of fact" and "justifiable reliance
27   on the misrepresentation." *Palomares v. Bear Stearns Residential Mortg. Corp.*, No.
28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

DEFENDANT DAVITA INC.'S NOTICE OF REMOVAL
Case No.: 2:25-cv-10742

1    07cv01899 WQH (BLM), 2008 WL 686683, at *4 (S.D. Cal. Mar. 13, 2008). And,

2    because Plaintiff's claims against the Individual Defendants sound in fraud,

3    Plaintiff's claims against them must also satisfy Rule 9(b)'s heightened pleading

4    standards. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009).

5         23.    Here, Plaintiff has failed to state a cause of action against either of the

6    Individual Defendants. Plaintiff does not even allege that he ever *interacted* with

7    either of the Individual Defendants, much less plead that Individual Defendants made

8    any misrepresentation to him or failed to disclose any information to him—let alone

9    with the specificity that Rule 9(b) requires. Compl. ¶¶ 22–29. Because Plaintiff has

10   not even alleged any misrepresentations or omissions by the Individual Defendants,

11   he also necessarily has failed to sufficiently plead his reliance on any purported

12   misrepresentations or omissions. For these reasons alone, Plaintiff has failed to state

13   a claim against the Individual Defendants and they have been fraudulently joined to

14   this lawsuit.

15        24.    The Individual Defendants have also been fraudulently joined because

16   the "sole basis" of Plaintiff's claims against them are that they were "performing

17   duties within the scope of [their] employment." *Rojas*, 538 F. Supp. 3d at 1025–26;

18   *Calderon*, 2015 WL 3889289, at *4. Plaintiff alleges that Individual Defendants were

19   DaVita employees and that, "at all material times," the Individual Defendants were

20   "acting within the purpose and scope of . . . [their] employment." Compl. ¶¶ 5–6, 9–

21   12. The Complaint also contains only generalized allegations against the Individual

22   Defendants based upon actions they purportedly took in their capacities as DaVita

23   employees. For example, Plaintiff alleges that "DaVita directed [the Individual

24   Defendants] to "use their sales backgrounds to drive up the number of patients placed

25   on PD treatment" and that the Individual Defendants did so while "[a]cting under

26   DaVita's instructions." *Id.* ¶ 23. Similarly, Plaintiff alleges that DaVita, "through

27   [the Individual Defendants] . . . also require staff to log and track every patient who

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

DEFENDANT DAVITA INC.'S NOTICE OF REMOVAL
Case No.: 2:25-cv-10742

1    was approached about PD." *Id.*  ¶ 28.  And, every claim that Plaintiff asserts against

2    the Individual Defendants is also brought against DaVita without any individualized

3    allegations concerning any purported conduct by the Individual Defendants that was

4    outside the scope of their alleged employment. *Id.* ¶¶ 9, 84–95, 105–121. Because

5    Plaintiff's Complaint does not contain any allegations regarding the Individual

6    Defendants' purported actions other than those within the scope of their employment,

7    those defendants are unnecessary and improper and should be disregarded for

8    purposes of establishing diversity of citizenship.

9        **iii.    Complete Diversity of Citizenship Exists.**

10        25.    Additionally, the citizenship of defendants "Does 1 to 100" "shall be

11    disregarded" in determining whether diversity exists. 28 U.S.C. § 1441(b)(1);

12    *Soliman v. Philip Morris Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("The citizenship

13    of fictitious defendants is disregarded for removal purposes and becomes relevant

14    only if and when the plaintiff seeks leave to substitute a named defendant.").

15        26.    Complete diversity exists between the only relevant parties to this

16    action—Plaintiff and DaVita.

17        **iv.    The Amount in Controversy Exceeds $75,000.**

18        27.    The amount in controversy is the amount at stake in the underlying

19    litigation. *Jauregui*, 28 F. 4th at 994. Importantly, this "does not mean likely or

20    probable liability; rather, it refers to possible liability." *Id.* (citation omitted); *Arias

21    v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (assumptions

22    regarding the amount in controversy can be "founded on the allegations of the

23    complaint").

24        28.    DaVita denies the validity and merit of Plaintiff's alleged claims and of

25    the relief Plaintiff purports to seek, but for purposes of establishing the amount in

26    controversy and setting forth grounds for this Court's jurisdiction—and without

27

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

DEFENDANT DAVITA INC.'S NOTICE OF REMOVAL
Case No.: 2:25-cv-10742

conceding that Plaintiff is entitled to any damages or any relief whatsoever—it is apparent that the Complaint seeks relief far exceeding the jurisdictional minimum.

29.    The Complaint seeks "economic damages according to proof, no less than *one billion dollars*;" "general damages according to proof at trial, no less than *one billion dollars*;" "compensatory damages according to proof at trial, no less than *one billion dollars*;" "special damages according to proof at trial, no less than *one billion dollars*;" and "exemplary and punitive damages according to proof at trial, no less than *one billion dollars*." Compl. at p. 27 (Prayer for Relief) (emphasis added). The Complaint thus purports to seek at least $5,000,000,000 on behalf of Plaintiff alone, which more than satisfies the $75,000 amount in controversy requirement.

**B. Alternatively, this Court has Jurisdiction Under CAFA (28 U.S.C. § 1332(d)).**

30.    DaVita can also establish CAFA jurisdiction pursuant to 28 U.S.C. § 1332(d).

**i.    Minimal Diversity of Citizenship is Established.**

31.    At least one plaintiff or putative class member is a citizen of a different state than DaVita.

32.    The fact that Plaintiff is a citizen of California and DaVita is a citizen of Delaware and Colorado, *see supra* Section II(A)(i), satisfies CAFA's minimal diversity of citizenship requirement. 28 U.S.C. § 1332(d)(2).

**ii.    DaVita Is Not a Governmental Entity.**

33.    DaVita is the primary defendant in this action, and is not a State, State official, or other governmental entity. Compl. ¶ 4; Anderson Decl. ¶ 4, Ex. A.

**iii.    The Proposed Class Exceeds 100 Members.**

34.    The Complaint states: "Plaintiff is informed and believes that there are over eighty thousand (80,000) Class Members." Compl. ¶ 67. Accordingly, the proposed class is greater than 100 members. *See* 28 U.S.C. § 1332(d)(5)(B).

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT DAVITA INC.'S NOTICE OF REMOVAL
Case No.: 2:25-cv-10742

**iv. The Aggregate Amount in Controversy Exceeds $5 Million.**

35.    DaVita denies the validity and merit of Plaintiff's alleged claims and of the relief Plaintiff purports to seek, that Plaintiff and the putative class he seeks to represent are entitled to any relief whatsoever, and that this action is appropriate for class treatment under Rule 23. But for purposes of establishing the amount in controversy and setting forth grounds for this Court's jurisdiction—and without conceding that Plaintiff or the putative class are entitled to damages or any relief whatsoever— it is apparent from the face of the Complaint that the aggregated claims of the putative class exceed CAFA's jurisdictional minimum. *Arias*, 936 F. 3d at 925.

36.    The Complaint seeks "economic damages according to proof, no less than **one billion dollars**;" "general damages according to proof at trial, no less than **one billion dollars**;" "compensatory damages according to proof at trial, no less than **one billion dollars**;" "special damages according to proof at trial, no less than **one billion dollars**;" and "exemplary and punitive damages according to proof at trial, no less than **one billion dollars**." Compl. at p. 27 (Prayer for Relief) (emphasis added). The Complaint thus purports to seek at least $5,000,000,000 **on behalf of Plaintiff alone**, not to mention the other supposed 80,000 members of the putative class Plaintiff seeks to represent. As a result, the CAFA amount in controversy requirement of $5,000,000 is easily satisfied.

**v.    The "Local Controversy" and "Home-State Controversy" Exceptions Do Not Apply.**

37.    CAFA has two exceptions to original jurisdiction in the federal courts, the "local controversy" and "home-state controversy" exceptions, 28 U.S.C. § 1332(d)(4), neither of which is applicable in this matter. Because DaVita has demonstrated that the Court's exercise of CAFA jurisdiction is proper, Plaintiff bears the burden of demonstrating one of these exceptions applies to this case. *Serrano v. 180 Connect, Inc.*, 478 F. 3d 1018, 1024 (9th Cir. 2007). Plaintiff cannot do so.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

DEFENDANT DAVITA INC.'S NOTICE OF REMOVAL
Case No.: 2:25-cv-10742

38.    The home-state controversy exception divests a federal court of jurisdiction over a class action if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

39.    A "primary defendant" is one "(1) who has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the claims asserted by plaintiffs; or (5) is the only defendant named in one particular cause of action." *Marino v. Countrywide Financial Corp.*, 26 F. Supp. 3d 949, 953 (C.D. Cal. 2014).

40.    Under all of these criteria, DaVita is the primary defendant. It has greater liability exposure, as it is named as a defendant in all seven claims in the Complaint rather than the four in which the Individual Defendants are named; it has greater financial resources than the Individual Defendants; it is sued directly; it is the subject of all of the claims asserted by Plaintiff; and it is the only defendant named in almost half of the claims in the Complaint.

41.    DaVita does not dispute that at least two-thirds of the putative class are citizens of California. However, because DaVita, the primary defendant, is a citizen of Delaware and Colorado (*see supra* ¶¶ 16–17), the home-state controversy exception does not apply.

42.    The local controversy exception applies where "(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed; (II) at least [one] defendant is a defendant from whom significant relief is sought by members of the plaintiff class; whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and who is a citizen of the State in which the action was originally filed; and (III) principal injuries resulting from the alleged conduct or any

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

related conduct of each defendant were incurred in the State in which the action was originally filed; and (IV) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A). The exception is "narrow" and "carefully drafted to ensure that it does not become a jurisdictional loophole." *Clark v. WorldMark, The Club*, 1:18-cv-01661-LJO-JLT, 2019 WL 1023887, at *4 (E.D. Cal. Mar. 4, 2019) (citing Sen. Rep. 109-14 at *29).

43.    DaVita concedes that prongs one, three, and four are met.

44.    As to prongs one and three, Plaintiff seeks to represent a putative class of "all current and former patients of Defendants within the State of California who underwent PD treatment at any time commencing ten (10) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class" (Compl. ¶ 64), thus, DaVita is informed and believes that most or all of the class members are citizens of the State of California and experienced any alleged injuries in California. *See Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019) (allegations of citizenship may be based solely on information and belief).

45.    As to prong four, DaVita states that it has not been sued in a class action lawsuit based on the same or similar factual allegations in the last three years.

46.    However, prong two of the local controversy exception is ***not*** met.

47.    The only Defendants that are citizens of California are the Individual Defendants. Plaintiff's Complaint does not seek significant relief from the Individual Defendants, nor is the alleged conduct of the Individual Defendants a significant basis for the claims asserted in the Complaint.

48.    Though Plaintiff purports to seek joint and several relief against the Individual Defendants (Compl. ¶¶ 12–13, p. 27 (Prayer for Relief)), only four of the

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

DEFENDANT DAVITA INC.'S NOTICE OF REMOVAL
Case No.: 2:25-cv-10742

1    seven claims in the Complaint are brought against the Individual Defendants. *Id.* ¶¶
2    84–95, 105–121.

3          49.    For two of the four claims brought against the Individual Defendants,
4    the second cause of action for purported violations of the UCL and the third cause of
5    action for purported violations of the FAL, Plaintiff seeks damages on behalf of
6    himself and the class. *Id.* ¶¶ 88, 94–95.

7          50.    However, damages are not an available remedy for violations of either
8    the UCL or the FAL. *Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1082
9    (N.D. Cal. 2022) ("Although both damages and equitable relief are available under
10   the CLRA, the remedies available in a UCL or FAL action are limited to injunctive
11   relief and restitution.") (internal citation omitted).

12         51.    Plaintiff's Complaint does not seek injunctive relief or restitution—the
13   only available remedies under the UCL and FAL. Compl. at 27 (Prayer for Relief).

14         52.    Thus, Plaintiff's Complaint at most seeks relief from the Individual
15   Defendants on two of seven causes of action (intentional and negligent
16   misrepresentation). *See Adame v. Comprehensive Health Management, Inc.*, No. CV
17   19-00779-CJC(SKx), 2019 WL 1276192, at *3 (C.D. Cal. Mar. 19, 2019) ("To
18   determine if the putative class seeks 'significant relief' from [a defendant], the Court
19   looks to the remedies requested by Plaintiff in the complaint."). Those same causes
20   of action are also brought against DaVita and are based on actions done by the
21   Individual Defendants solely in the course of their employment. *Cf. Clark*, 2019 WL
22   1023887, at *6 (finding complaint's allegations insufficient to show significant relief
23   was sought against local defendant where it was impossible "to determine, even
24   provisionally, how damages might be apportioned").

25         53.    Moreover, the Complaint does not support a determination that the
26   Individual Defendants' conduct was a "significant basis" for the claims asserted
27   against them.

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

DEFENDANT DAVITA INC.'S NOTICE OF REMOVAL
Case No.: 2:25-cv-10742

54.    "When making this determination, courts are required to compare the allegations against the local defendant to those made against the other defendants." *R.A. by and Through Altes v. Amazon.com, Inc.*, 406 F. Supp. 3d 827, 832 (C.D. Cal. 2019). "The local defendant's alleged conduct must be an *important* ground for the asserted claims in view of the alleged conduct of all the defendants." *Id.* (emphasis in original).

55.    The Complaint does not even allege that Plaintiff ever interacted with either of the Individual Defendants, much less that they ever made any misrepresentations to him or failed to disclose any information to him. *See, e.g.*, Compl. ¶¶ 5–6, 18–19, 23, 28.   Moreover, the minimal allegations regarding the Individual Defendants all concern purported conduct done in the scope of their employment. *Id.*   This is insufficient to show that the Individual Defendants' actions were a "significant basis" of the claims alleged in Plaintiff's Complaint. *See Busker v. Wabtec Corp.*, 750 Fed. Appx. 522, 523–24 (9th Cir. 2018) (where a local defendant's "sole alleged conduct was undertaken as an agent of [an out of state defendant]," the plaintiff failed to establish significant basis); *Evangelista v. Just Energy Mktg. Corp.*, No. SACV 17–02270–CJC(SSx), 2018 WL 1773628, at *5 (C.D. Cal. Apr. 12, 2018) (allegations of joint and several liability are insufficient to prove that local controversy exception applied); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 WL 5311089, at *4 (C.D. Cal. Sept. 10, 2015) ("bare allegations" that local defendant acted together with other defendant were insufficient to show applicability of the local controversy exception).

56.    The Complaint contains no allegations about Individual Defendants' role in allegedly misleading class members about PD treatment, or regarding any alleged representations by the Individual Defendants.

57.    Because the Complaint's allegations are insufficient to allege that significant relief is sought against the Individual Defendants, or that the Individual

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

DEFENDANT DAVITA INC.'S NOTICE OF REMOVAL
Case No.: 2:25-cv-10742

Defendants' actions are a significant basis for Plaintiff's claims, the local controversy exception to CAFA does not apply.

58.     Therefore, neither of the exceptions to CAFA jurisdiction apply and the Court may properly exert CAFA jurisdiction over this case.

## IV.   <u>VENUE FOR REMOVAL</u>

59.     Because this action is brought in the Los Angeles County Superior Court, venue for purposes of removal is proper in this Court under 28 U.S.C. § 84(c): this District embraces Los Angeles County, California, the place where the removed action has been pending. *See* 28 U.S.C. §§ 1441(a) and 1446(a).

## IV.   <u>NOTICE OF FILING OF NOTICE OF REMOVAL</u>

In accordance with 28 U.S.C. § 1446(d), DaVita will promptly provide written notice to counsel of record for Plaintiff and will promptly file a copy of this Notice of Removal with the Los Angeles County Superior Court.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, this Court has jurisdiction to hear this case. DaVita has thus properly removed the underlying action to this Court.


Dated: November 7, 2025          **FAEGRE DRINKER BIDDLE & REATH LLP**


By:*/s/ Joshua E. Anderson*
JOSHUA E. ANDERSON
DAVID A. BELCHER
KAYLEE A. RACS

Attorneys for Defendant
DAVITA INC.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

DEFENDANT DAVITA INC.'S NOTICE OF REMOVAL
Case No.:  2:25-cv-10742

# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
DAVITA INC., a Delaware corporation; MARTHA TASHJIAN, an individual; SHELLY MARTINEZ, an individual; and Does 1 to 100, inclusive

**Electronically FILED by Superior Court of California, County of Los Angeles 10/08/2025 11:59 AM David W. Slayton, Executive Officer/Clerk of Court, By J. Covarrubias, Deputy Clerk**

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
VICTOR SANCHEZ, an individual and on behalf of all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Stanley Mosk Courthouse<br><br>111 North Hill Street, Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del Caso:)*<br>**25STCV29466** |
|---|---|

David W. Slayton, Executive Officer/Clerk of Court

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kousha Berokim, BEROKIM LAW, 270 N Canon Dr, Fl 3, Beverly Hills, CA  90210, (310) 846-8553

| DATE: 10/08/2025 | Clerk, by | J. Covarrubias | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

    under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100  [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

1  Kousha Berokim | SBN 242763
2  **BEROKIM LAW**
   270 North Cañon Drive, Third Floor
3  Beverly Hills, California 90210
   T (310) 846.8553 | F (310) 300-1233
4  berokim@berokim.com

   Attorneys for Plaintiff Victor Sanchez and
5  on behalf of himself and all others similarly situated

Electronically FILED by
Superior Court of California,
County of Los Angeles
10/08/2025 11:59 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Covarrubias, Deputy Clerk

6
7

## SUPERIOR COURT OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES

8
9   VICTOR SANCHEZ, an individual and on
    behalf of all others similarly situated,

10
11                          Plaintiff,

12          v.

13

14  DAVITA INC., a Delaware corporation;
    MARTHA TASHJIAN, an individual;
15  SHELLY MARTINEZ, an individual; and
    Does 1 to 100, inclusive,
16

17

18                          Defendants.

19  //

20

21  //

22

23

24  //

25

26  //

27

28

**Case Number:** 25STCV29466

**CLASS ACTION COMPLAINT FOR:**

1.   **Negligence**

2.   **Unfair Competition (Bus. & Prof. Code, § 17200)**

3.   **False Advertising (Bus. & Prof. Code, § 17500)**

4.   **Concealment**

5.   **Intentional Misrepresentation**

6.   **Negligent Misrepresentation**

7.   **Breach of Fiduciary Duty**

**DEMAND FOR JURY TRIAL**

**UNLIMITED JURISDICTION**

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

926098.1 5839.050

1
CLASS ACTION COMPLAINT

Plaintiff Victor Sanchez, on behalf of Plaintiff and all others similarly situated, alleges as follows:

## GENERAL ALLEGATIONS

## SUMMARY OF THE CLAIM

1.      Dialysis provider, Defendant DaVita Inc. ("DaVita"), has implemented a scheme to fraudulently coerce many of its patients into receiving dialysis at home instead of at its clinics. The majority of those patients are not medically or otherwise suited for home dialysis, and in fact are subjected to unnecessary serious risks of infection and other harms, which could be avoided or lessened through clinic dialysis. To implement this scheme, DaVita has placed individuals with executive sales background and absolutely no medical background, such as a former Starbucks regional manager, Defendant Shelly Martinez, and a former Target store manager, Defendant Martha Tashjian, in higher management positions, as DaVita's Los Angeles regional manager, and as the director of one of DaVita's mega-clinics in Los Angeles, respectively, to implement fraudulent coercive schemes to force DaVita's medical and often non-medical staff to target and bully vulnerable patients with individualized false messaging into receiving home dialysis. These patients often suffer from serious harm and infection from self-administered home dialysis, resulting in hospitalization, compromised health, lesser odds of receiving kidney transplant, and shortened lives. DaVita's only reason for this scheme is money. By forcing patients to receive Dialysis at home, DaVita's clinic overhead for staffing is significantly reduced, additional chairs are opened up at its clinics for new patients, and at the same time, DaVita charges more for home dialysis than clinic dialysis, because home dialysis is required to be done every day, whereas clinic dialysis is usually only done about three times a week, resulting in double charges for services and supplies. Through this scheme, DaVita gains billions of dollars in profits.

2.      This is a Class Action, pursuant to Code of Civil Procedure section 382, against DaVita Inc. and any of its respective subsidiaries or affiliated companies, Martha Tashjian, and Shelly Martinez, on behalf of Plaintiff and all others similarly situated ("Class Members"). Defendants DaVita, Martha Tashjian, Shelly Martinez, and Does 1 through 100, as further described below, are collectively referred to as "Defendants."

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

# PARTIES

**A. Plaintiff**

3.     Plaintiff Victor Sanchez is an individual residing in Los Angeles County, California and at all relevant times to this Complaint was a patient of Defendant DaVita Inc.

**B. Defendants**

4.     Plaintiff is informed and believes and based thereon alleges that Defendant DAVITA INC., (hereinafter, "DaVita") is, and at all times relevant to this Complaint was, an entity engaged in the provision of dialysis treatment, conducting business in California, including Los Angeles.

5.     Plaintiff is informed and believes and based thereon alleges that Defendant Martha Tashjian is, and at all times relevant to this Complaint was, an individual employed by DaVita, residing in Los Angeles County, California, as a Clinic Director at one of DaVita's Los Angeles clinics.

6.     Plaintiff is informed and believes and based thereon alleges that Defendant Shelly Martinez is, and at all times relevant to this Complaint was, an individual employed by DaVita, residing in Los Angeles County, California, as the Regional Operations Director at DaVita for the Los Angeles area.

7.     Plaintiff does not know the true names or capacities of the Defendants sued as DOES 1 through 100, inclusive.  Thus, Plaintiff sues these Defendants under fictitious names. When their true names and capacities have been ascertained, Plaintiff will amend this Complaint.

8.     Plaintiff is informed and believes, and based thereon alleges, that the fictitiously named Defendants were the agents, servants, and employees of each of the named Defendants and, in doing the acts and things alleged, were at all times acting within the course and scope of that agency, servitude, and employment and with the permission, consent, and approval, or subsequent ratification, of each of the named Defendants.  Reference to "Defendants" includes the named Defendant and the DOE Defendants.

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

9.     Plaintiff is informed and believes, and based thereon alleges, that at all material times, each of the Defendants was the agent and/or employee of each of the remaining Defendants, and each of them was at all material times acting within the purpose and scope of such agency and employment.

10.     Plaintiff is informed and believe and thereon allege that there exists such a unity of interest and ownership between Defendants and Does 1 to 100 that the individuality and separateness of those entities have ceased to exist.

11.     Plaintiff is informed and believe and thereon allege that there exists such a unity of interest and ownership between Defendants and Does 1 to 100 that the individuality and separateness of those Defendants have ceased to exist. The business affairs of Defendants', and Does 1 to 25 are, at all times relevant hereto were, so mixed and intermingled that the same cannot reasonably be segregated, and the same are in inextricable confusion. Defendants are, and at all times relevant hereto were used by Does 1 to 100, and each of them, as mere shells and a conduit for the conduct of certain of Defendants' affairs.  The recognition of the separate existence of Defendants and Does 1 to 100, would not promote justice, in that it would permit Defendants to insulate themselves from liability to Plaintiffs. Accordingly, Defendants and Does 1 to 100, constitute the alter egos of each other, and the fiction of their separate existence must be disregarded at law and in equity because such disregard is necessary to avoid fraud and injustice to Plaintiffs herein.

## JOINT LIABILITY ALLEGATIONS

12.     Plaintiff is informed and believes and based thereon alleges that all the times mentioned herein, each of the Defendants was the agent, principal, employee, employer, representative, joint venture or co-conspirator of each of the other defendants, either actually or ostensibly, and in doing the things alleged herein acted within the course and scope of such agency, employment, joint venture, and conspiracy.

13.     All of the acts and conduct described herein of each and every corporate defendant was duly authorized, ordered, and directed by the respective and collective defendant corporate

employers, and the officers and management-level employees of said corporate employers. In addition thereto, said corporate employers participated in the aforementioned acts and conduct of their said employees, agents, and representatives, and each of them; and upon completion of the aforesaid acts and conduct of said corporate employees, agents, and representatives, the defendant corporation respectively and collectively ratified, accepted the benefits of, condoned, lauded, acquiesced, authorized, and otherwise approved of each and all of the said acts and conduct of the aforementioned corporate employees, agents and representatives.

## JURISDICTION

14.     Jurisdiction is conferred on this Court over each Defendant named herein as each Defendant conducts business in California. Jurisdiction is conferred on this Court as to all Claims for Relief as they arise under state statutory or common law.

15.     Venue is proper in this Court because, among other things, Defendants are doing business in this County and have their principal place of business and or residence in this County; the causes of action complained of herein arose in this County; and Defendants, or some of them, reside in this County. Moreover, the unlawful acts alleged herein have a direct effect on Plaintiff and Class Members in Los Angeles County, and numerous Class Members in Los Angeles County have been patients of Defendants.

16.     Plaintiffs have complied with Code of Civil Procedure § 364

## FACTUAL BACKGROUND

17.     DaVita is a Fortune 500 corporation and one of the largest dialysis providers in the world. Dialysis is a life-sustaining treatment in which a machine takes over the work of the kidneys by removing blood, filtering it, and returning it cleansed to the body. As a healthcare company entrusted with providing life-sustaining treatment, DaVita owes its patients honesty, transparency, and care.

18.     Defendant Martha Tashjian serves as a Clinic Director at one of DaVita's Los Angeles clinics. She has no medical education, no clinical training, and no dialysis experience whatsoever. Her professional background is in retail sales—most notably as a Target store

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

manager. DaVita hired her not for medical expertise or patient care, but for her ability to drive revenue. Her role is singular: to maximize profits. Patient health and safety are treated as an afterthought, if considered at all.

19.     Defendant Shelly Martinez is the Regional Operations Director for DaVita in the Los Angeles area. Like Tashjian, Martinez possesses no medical background, no clinical training, and no dialysis experience. Her prior work experience is in retail management at Starbucks. She too was placed in a position of authority at DaVita for one reason only—to increase profits. The wellbeing of patients is secondary to the company's financial interests.

20.     Peritoneal dialysis ("PD") is a needle-free, at-home treatment that uses a surgically placed abdominal catheter to infuse and drain a cleansing solution ("dialysate"), often with the aid of an automated "cycler" machine. Through this method, waste products are absorbed into the dialysate, which is then drained from the body.

21.     DaVita, for at least the past ten (10) years and continuing to this day, has designed and executed a profit-driven scheme to fraudulently and unnecessarily coerce vulnerable patients—Class Members—into PD, to maximize DaVita's revenue while exposing Class Members to severe and undisclosed risks.

22.     It must be stressed at the outset of this Complaint that the subject of this claim is not PD.  For many patients, PD is proper, or even necessary.  Many other patients properly and knowingly assume the inherent risks of PD as it may better suit their needs, health, and lifestyle. Rather, this claim concerns DaVita's systematic fraudulent scheme to coerce Class Members who otherwise are not suited for PD into PD, through lies, omissions, and coercion, solely for significant financial profits.

23.     DaVita directed Defendants Tashjian and Martinez, along with other managing agents, to use their sales backgrounds to drive up the number of patients placed on PD treatment.

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

1    Acting under DaVita's instructions, Tashjian and Martinez pressure not only medical

2    professionals—such as doctors and nurses—but also non-medical personnel, including social

3    workers and receptionists, to coerce patients into choosing PD.

4          24.    To facilitate this scheme, DaVita implemented a program called "MATCH-D," a

5    sales campaign falsely presented as patient education. Through MATCH-D, Tashjian and

6    Martinez, together with other DaVita managing agents, instruct staff to aggressively push PD on

7    patients, even when patients voice concerns or when PD is medically inappropriate. Through

8    MATCH-D, Defendants track DaVita's staff's forced efforts in pushing PD on patients, and use

9    MATCH-D to provide individualized messaging and other tactics for each targeted patient to be

10   implemented through the assigned staff member as to each targeted patient. The driving force

11   behind these efforts is not patient health or informed choice, but DaVita's financial gain. In other

12   words, DaVita is not concerned about whether PD is the right choice for a particular patient; it is

13   only concerned about increasing sales and profits, which PD would accomplish.

14

15         25.    As part of this ongoing campaign, Tashjian and Martinez, along with other DaVita

16   managing agents, routinely coerce both medical and non-medical personnel to pressure as many

17   patients as possible into transitioning to PD.

18         26.    To enforce compliance, Defendants impose quotas requiring DaVita personnel to

19   meet minimum numbers of patient conversions to PD. Staff performance is judged not by the

20   quality of patient care, but by how many patients they could convince to switch treatments.

21

22         27.    Employees who fail to meet these quotas are subjected to retaliation, intimidation,

23   and humiliation by DaVita's managing agents, including Tashjian and Martinez, placing their

24   jobs at risk.

25         28.    DaVita, through Defendants Tashjian and Martinez, among other managing

26   agents, also require staff to log and track every patient who was approached about PD. Staff are

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

instructed to record their efforts to persuade patients, note whether each patient agreed to PD, and, if not, document the reasons for refusal. These records are used to monitor and pressure employees into intensifying their sales efforts.

29.     In addition, Defendants, including Defendants Tashjian and Martinez, hold mandatory weekly meetings with staff to review the staff's progress as to coercing targeted patients into PD, push the staff to more aggressively target patients, discuss strategies to convert more patients, guide the staff as to how to force each individual targeted patient into PD, and devise new coercive tactics. At these meetings, DaVita distributes promotional materials—including brochures and videos—to be shown directly to patients. Employees are also shown propaganda videos featuring supposed PD "success stories" and are drilled on talking points designed to mislead patients into believing PD is safer, easier, and more beneficial than it actually is.

30.     To further drive conversions, DaVita systematically misleads patients about the risks and benefits of PD. Staff are instructed to recite a scripted list of exaggerated and false claims, including that PD is easier, allows for travel and swimming, preserves kidney function, involves fewer dietary restrictions, and leads to better transplant outcomes. DaVita also assure patients that supplies could be shipped anywhere and that catheter issues are rare or nonexistent—representations that are false and designed solely to induce patients to accept PD.

31.     DaVita train its staff to tailor their manipulative sales pitches to each patient's personal circumstances. For instance, if a patient mentions needing to travel for work, DaVita staff are taught to falsely claim that PD allows for easy travel and on-the-go treatment. Staff are encouraged to use patients' vulnerabilities, fears, and needs as leverage to close the "sale."

32.     These promises are crafted to make PD sound superior to in-center dialysis, while downplaying or ignoring the reality of PD's dangers.

CLASS ACTION COMPLAINT

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

33.     The truth is starkly different. PD carries serious risks, which DaVita routinely conceals. The risks associated with PD are lengthy. They include, but are not limited to:

a)     **Risk of Infection:** There is a high potential for patients using PD to contract serious infections such as peritonitis. Peritonitis is an infection and inflammation of the lining of the abdominal cavity. Peritonitis occurs in PD when bacteria enter the abdomen through the PD catheter during fluid exchanges, often from contamination of the catheter or exit site.

b)     **Hernia Risk:** Increased abdominal pressure from PD fluid can lead to hernias, particularly in the abdominal wall.

c)     **Bulky Equipment:** Automated PD machines are large (approximately 20" × 13" × 24") and weigh about 25 pounds, which can limit their portability, rendering it difficult to travel with and do treatment on-the-go as advertised by DaVita.

d)     **Travel Challenges:** The bulky machines and supplies require substantial storage and are extremely difficult to transport, making travel burdensome or impossible.

e)     **Storage Requirements:** Supplies and equipment require significant storage space, which may be difficult for some patients.

f)     **Sleep Disruption:** Automated cyclers may trigger alarms during the night if the patient's sleep position obstructs fluid flow, thereby frequently interrupting sleep.

g)     **Daily Treatment Commitment:** PD requires treatment seven days a week, whereas traditional in-center dialysis requires a fewer number of treatments.

h)     **Treatment Fatigue:** Unlike in-center dialysis, PD requires daily treatment, seven days a week, with no meaningful breaks or recovery periods. Over time, this relentless regimen causes severe physical and emotional exhaustion, leading to burnout and disruption of daily life. Many patients eventually become unable or

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

unwilling to maintain the demanding treatment schedule. When PD treatments are missed or discontinued, patients are deprived of the necessary level of dialysis, resulting in the accumulation of toxins in the body—conditions that can cause serious medical complications and, in some cases, death.

i)   **Time Requirement:** Daily exchanges are time-consuming (setup typically takes at least 20 minutes) and may disrupt daily activities.

j)   **Strict Sterility Requirements:** Diligent and proper hand hygiene and sterile technique are critical to avoid infection.

k)   **Permanent Catheter:** A PD catheter remains in the abdomen at all times and is externally secured with tape. This can often be uncomfortable or aesthetically unappealing.

l)   **Catheter Complications:** The catheter may become blocked, kinked, or infected, complicating treatment.

m)   **Metabolic Effects:** PD solutions contain dextrose, which can be absorbed into the body, potentially causing weight gain or elevated blood sugar—particularly concerning for patients with diabetes.

n)   **Potential Back Pain:** Increased abdominal pressure and weight from PD fluid can contribute to back discomfort.

34.   Yet DaVita staff conceal and deny these risks, choosing instead to push false reassurances in order to secure conversions to PD.

35.   DaVita's coercion tactics go even further. Staff corner Class Members immediately after dialysis sessions, when Class Members are exhausted, lightheaded, or semi-conscious, exploiting them at their most vulnerable. Class Members are rushed through so-called "training," pressured to meet with DaVita PD educators even after declining PD, and bombarded

with promotional trinkets like t-shirts and stickers emblazoned with slogans such as "Ask me about home dialysis" and "Home Wherever You Roam." Staff are required to track patient refusals in logs, turning vulnerable patients into sales quotas rather than human beings in need of care.

36.     Each Class Member was fraudulently coerced into beginning PD through one or more of the foregoing tactics and schemes by DaVita.

37.     As a direct and proximate result of Defendants' wrongful conduct, each Class Member has suffered, and continues to suffer, significant harm, including but not limited to the following injuries and damages:

a)     **Serious Infection**: Class Members contract—or face a substantial risk of contracting—life-threatening infections such as peritonitis—an infection and inflammation of the lining of the abdominal cavity—resulting from bacterial contamination of the PD catheter or exit site during fluid exchanges.

b)     **Hernias and Abdominal Damage**: The constant pressure of PD fluid within the abdomen causes hernias, particularly in the abdominal wall, leading to pain, weakness, and potential need for surgical intervention.

c)     **Bulky and Unmanageable Equipment**: The automated PD machines provided are excessively large and heavy (approximately 20" × 13" × 24" and weighing about 25 pounds), rendering them difficult to move, store, or transport—contrary to DaVita's representations of portability.

d)     **Travel Limitations and Burdens**: Because of the bulkiness and volume of the required equipment and supplies, Class Members struggle or are unable to travel as promised, forcing them to forgo personal and professional opportunities.

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

e)     **Storage Constraints**: PD equipment and supplies demand extensive storage space within Class Members' homes, creating physical inconvenience, clutter, and safety hazards—especially for those in smaller living environments.

f)     **Sleep Disturbance and Fatigue**: Automated PD cyclers frequently trigger alarms throughout the night, particularly when a Class Member's sleep position obstructs fluid flow, resulting in chronic sleep interruption and exhaustion.

g)     **Daily Treatment Burden**: Unlike in-center dialysis, which occurs three times per week, PD requires daily treatment—seven days a week—imposing a relentless schedule that disrupts normal life and rest.

h)     **Treatment Fatigue and Burnout**: Class Members subjected to the relentless demands of PD suffer severe physical and emotional exhaustion due to the requirement of performing treatment every single day without reprieve. This constant burden leads to burnout, disruption of daily life, and diminished mental and physical well-being. As fatigue sets in, many Class Members struggle to maintain the daily regimen, resulting in skipped or incomplete treatments. The resulting lack of adequate dialysis causes toxin buildup in the body, placing patients at heightened risk of serious medical complications, hospitalization, and even death.

i)     **Excessive Time Demands**: Daily setup and exchange procedures are time-consuming—taking at least 20 minutes per session—and interfere with Class Members' work, family responsibilities, and daily activities.

j)     **Strict and Stressful Sterility Requirements**: To avoid infection, Class Members must adhere to meticulous hand hygiene and sterile procedures. This constant

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

vigilance imposes significant stress and anxiety, as even minor errors can lead to serious infection.

k)   **Permanent and Uncomfortable Catheters**: Class Members are required to live with a permanent catheter surgically implanted in their abdomen, which is externally taped to the skin, often causing physical discomfort, irritation, and embarrassment.

l)   **Catheter Malfunctions and Complications**: The PD catheters frequently become blocked, kinked, or infected, causing treatment interruptions, additional procedures, and, in many cases, surgical repair.

m)   **Metabolic and Weight Effects**: PD solutions contain high levels of dextrose that are absorbed into the body, leading to weight gain, elevated blood sugar, and heightened health risks—especially among diabetic Class Members.

n)   **Back Pain**: The constant abdominal pressure and added weight from PD fluid contribute to persistent back pain, muscle strain, and reduced mobility.

o)   **General Damages**: As a result of the foregoing, Class Members have suffered and continue to suffer severe pain and suffering; emotional distress; mental anguish; anxiety; humiliation; loss of enjoyment of life; loss of confidence in their medical providers; compromised health; lesser chances of receiving a kidney transplant; refusal to receive dialysis; and shortened lives. Class Members have also incurred, and will continue to incur, significant medical expenses, costs of corrective procedures, and other consequential damages.

38.   DaVita's motive is simple: financial greed. PD delivers far higher margins than in-center treatment.

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

39.    First, PD slashes costs. Because patients perform PD at home, DaVita avoids the significant expenses of in-facility care—salaries for nurses, dietitians, and support staff, as well as building and maintenance costs. PD also consumes fewer medical supplies, further reducing overhead.

40.    Second, PD drives revenue. (1) Each time a patient is shifted to PD, an in-center chair opens for another paying patient, expanding DaVita's capacity and billings. (2) Unlike in-center dialysis performed only three times a week, PD is done daily, allowing DaVita to collect reimbursement for seven sessions a week and generate a steady stream of inflated revenue. (3) On top of this, government incentives from the Centers for Medicare & Medicaid Services (CMS) make PD even more financially rewarding.

41.    The result is staggering: by coercing patients into PD, DaVita rakes in billions of dollars every year—profits achieved not through better care, but by exploiting vulnerable patients.

42.    In sum, DaVita's aggressive promotion and coercion of PD is not about patient choice or improved care—it is about maximizing profits and the expense of Class Members' health. Class Members are deceived, pressured, and placed at risk, while DaVita reaps the financial rewards of its systematic exploitation.

43.    Plaintiff Victor Sanchez is a victim of DaVita's PD scheme as described above. Plaintiff was deliberately targeted by DaVita as part of its profit-driven campaign to coerce vulnerable patients into PD treatment—regardless of medical appropriateness, safety, or patient well-being.

44.    In or around 2015, Sanchez was diagnosed with kidney cancer and underwent surgery that required removal of one kidney. As a result, Sanchez was left with serious kidney

issues and required dialysis and ultimately kidney transplant, to maintain and prolong his life. In 2024, Plaintiff went to one of DaVita's clinics in Los Angeles to get dialysis treatment.

45.     Shortly after beginning dialysis, DaVita, at the order and supervision of Martinez, began aggressively pressuring Sanchez to abandon in-center dialysis and switch to PD. DaVita staff relentlessly bombarded Sanchez with exaggerated claims and outright falsehoods about PD. Sanchez was told that PD would allow him to swim, travel freely, live a "normal life," preserve his kidney function, and almost never cause catheter complications.

46.     Because Sanchez frequently travels for work, he informed DaVita of his need for mobility. In response, DaVita staff seized upon that fact and assured him that PD would make travel easy and convenient. Davita told Sanchez that DaVita could ship all PD supplies directly to any travel destination, anywhere, at any time, so that he could do dialysis on the go, and that he could even swim when travelling.

47.     At the same time, DaVita deliberately minimized, concealed, and misrepresented the substantial dangers of PD. DaVita failed to disclose, among other things, that:

a)     PD patients face a high risk of contracting serious, potentially life-threatening infections such as peritonitis;

b)     PD machines are large and heavy, making them cumbersome, difficult to transport, and entirely impractical for travel;

c)     the sheer volume of PD supplies makes travel burdensome or impossible, as shipping supplies for short trips is logistically unmanageable;

d)     shipments of PD supplies often arrive late or after travel ends, leaving patients without necessary equipment;

e)     PD supplies require substantial in-home storage space, creating clutter and safety hazards;

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

f)       automated PD cyclers frequently sound alarms throughout the night, causing sleep deprivation and chronic fatigue;

g)       the daily nature of PD leads to severe exhaustion, burnout, and disruption of daily life;

h)       PD catheters are prone to blockages, kinks, and infections, requiring repeated medical or surgical intervention;

i)       the constant abdominal pressure and added fluid weight from PD cause chronic back pain, muscle strain, and reduced mobility; and

j)       to be able swim, the pool has to be sanitized, effectively resulting in lack of ability to swim in a public or even private pools.

48.       Simultaneously, DaVita used fear tactics to manipulate Sanchez into switching treatments. Staff warned him that if he continued with in-center dialysis, his health would deteriorate—claiming that he would lose all kidney function, lose the ability to urinate, require increased dialysis, and ultimately need antibiotics.

49.       DaVita's conduct was not merely misleading; it was predatory. Staff deliberately targeted Sanchez immediately after his dialysis sessions, when he was physically weak, semi-conscious, and suffering from low blood pressure. They exploited him at his most vulnerable moments to push their sales agenda. Making matters worse, DaVita deliberately scheduled Sanchez's dialysis sessions at 4:00 a.m., ensuring he was further fatigued and susceptible to their coercive tactics.

50.       Under this sustained pressure and deception, Sanchez felt he had no real choice. Relying on DaVita's false assurances and concealment of the truth, he reluctantly agreed to transition to PD.

CLASS ACTION COMPLAINT

51.     Once Sanchez began PD, the truth quickly surfaced: DaVita had concealed the very dangers he was now facing.

52.     The massive volume of PD equipment and supplies overwhelmed his living space, consuming far more room than DaVita had disclosed.

53.     The cycler machine was extremely bulky and heavy, making travel nearly impossible.

54.     Despite DaVita's repeated promises, PD supplies frequently arrived late or failed to reach his travel destinations altogether—leaving him without the materials necessary for treatment during short business trips.

55.     The PD catheter, which DaVita staff had assured him would not cause problems, instead caused repeated complications and was extremely difficult to connect to the cycler. Sanchez was forced to undergo surgery to repair the catheter.

56.     The cycler's alarms constantly disrupted his sleep, sounding off multiple times each night whenever the catheter disconnected, depriving him of rest and peace of mind.

57.     As a result of DaVita's conduct, Sanchez also suffered severe physical and emotional exhaustion from being required to perform PD treatment every single day without rest. The relentless nature of the regimen caused significant fatigue, mental burnout, and disruption of his daily life and well-being. Over time, the exhaustion made it increasingly difficult for Sanchez to keep up with the demanding treatment schedule.

58.     The treatment also left Sanchez with persistent, debilitating back pain and muscle spasms that continue to this day.

59.     Most devastating of all, Sanchez contracted peritonitis—a severe and life-threatening infection—as a direct result of PD, precisely the risk DaVita had downplayed and dismissed. Sanchez was hospitalized for a week to treat the infection.

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

CLASS ACTION COMPLAINT

60.      After continuing PD treatment, Sanchez contracted peritonitis again, requiring another week-long hospitalization.

61.      These repeated infections have not only caused lasting physical harm but have also significantly reduced Sanchez's eligibility and prospects for a kidney transplant, further jeopardizing his health and future.

62.      As a direct result of DaVita's calculated deception, coercion, and concealment of material risks, Plaintiff Sanchez suffered severe and permanent injuries, including physical pain, infection, loss of sleep, emotional distress, and diminished quality of life. He also lost trust in his healthcare providers and continues to suffer ongoing physical and emotional harm.

63.      Sanchez's experience is not an isolated incident but part of DaVita's widespread, systematic practice of deceiving and coercing patients into PD treatment to maximize profits. Like Sanchez, countless Class Members are targeted through the same coordinated marketing scheme, subjected to the same false promises, omissions, and high-pressure tactics, and ultimately suffered the same types of harm—including infection, physical pain, emotional distress, and financial loss. DaVita's conduct represents not a series of individual missteps, but a deliberate, company-wide policy of prioritizing revenue over patient safety and wellbeing, implemented through sales executives instead of medical directors.

## CLASS ACTION ALLEGATIONS

64.      Plaintiff brings this action on behalf of Plaintiff and Class Members as a class action pursuant to Code of Civil Procedure section 382. Plaintiff seeks to represent a class of all current and former patients of Defendants within the State of California who underwent PD treatment at any time commencing ten (10) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class (collectively referred to as "Class Members").

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

65.    Plaintiff reserves the right under California Rule of Court rule 3.765, subdivision (b) to amend or modify the class description with greater specificity, further divide the defined class into subclasses, and to further specify or limit the issues for which certification is sought.

66.    This action has been brought and may properly be maintained as a class action under the provisions of Code of Civil Procedure section 382 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

**A.  <u>Numerosity</u>**

67.    The potential Class Members as defined are so numerous that joinder of all the members of the Class is impracticable. While the precise number of Class Members has not been determined yet, Plaintiff is informed and believes that there are over eighty thousand (80,000) Class Members being treated by Defendants within the State of California.

68.    Plaintiff alleges Defendants' PD-treatment records would provide information as to the number and location of all Class Members. Joinder of all members of the proposed Class is not practicable.

**B.  <u>Commonality</u>**

69.    Each Class Member was fraudulently coerced into beginning PD through one or more of the tactics and schemes by DaVita described above.

70.    Furthermore, each Class Member suffered significant damages described above because PD was never properly evaluated or determined to be medically appropriate for their individual circumstances. Instead, Defendants indiscriminately pushed PD on Class Members to inflate sales figures and increase profit margins, without conducting any meaningful or individualized assessment of whether PD was safe, effective, or suitable for each Class Member.

71.    There are questions of law and fact common to Class Members. These common questions include, but are not limited to:

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

a)   Were Defendants negligent when they refused to disclose all risks and dangers associated with PD to Plaintiff and Class Members?

b)   Was DaVita negligent in its hiring and reliance on unqualified managers with no medical backgrounds?

c)   Did Defendants violate Bus. & Prof. Code, § 17200 by misleading Plaintiff and Class Members concerning PD and profiting from it?

d)   Did Defendants violate Bus. & Prof. Code, § 17500 by distributing misleading marketing materials and making false claims about PD's benefits?

e)   Did Defendants make false representations about the benefits of PD and conceal known risks?

f)   Did Defendants breach their fiduciary duties to Plaintiff and Class Members by refusing to disclose all risks and dangers associated with PD to Plaintiff and Class Members?

**C.  Typicality**

72.   The claims of Plaintiff herein alleged are typical of those claims which could be alleged by any Class Members, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions. Plaintiff and Class Members sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of laws and regulations that have the force and effect of law and statutes as alleged herein.

**D.  Adequacy of Representation**

73.   Plaintiff will fairly and adequately represent and protect the interest of Class Members. Counsel who represents Plaintiff is competent and experienced in litigating dialysis-related actions.

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

**E.  Superiority of Class Action**

74.     A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is not practicable, and questions of law and fact common to Class Members predominate over any questions affecting only individual Class Members. Class Members, as further described therein, have been damaged and are entitled to recovery by reason of Defendants' policies and/or practices that have resulted in the violation of California law at times, as set out herein.

75.     Class action treatment will allow Class Members to litigate their claims in a manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### FIRST CAUSE OF ACTION
**Negligence**
**(Against Defendant DaVita Inc.)**

76.     Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

77.     Plaintiff and Class Members are, and at all relevant times have been, patients under the care of Defendants. During their custody of Plaintiff and Class Members to receive dialysis and return home, Plaintiff and Class Members are, and at all relevant times have been, under the care of Defendants who acted as their "primary care medical providers."

78.     Defendants owed a duty of ordinary care to the Plaintiff and Class Members, to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful medical professionals would use in the same or similar circumstances.

79.     A medical professional is negligent if he or she fails to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful medical professionals

would use in the same or similar circumstances.

80.     A medical professional acts with willful and wanton misconduct when it acts with absolute and active disregard for the consequences that will likely arise from its actions. "Willful or wanton misconduct is intentional wrongful conduct, done either with a knowledge that serious injury to another will probably result, or with a wanton and reckless disregard of the possible results. (*O'Shea v. Claude C. Wood Co.* (1979) 97 Cal.App.3d 903, 912.) Willful misconduct is "an aggravated form of negligence, differing in quality rather than degree from ordinary lack of care." (*Simmons v. Southern Pac. Transportation Co.* (1976) 62 Cal.App.3d 341, 360.)

81.     Here, not only did Defendants fail to use the degree of care that a reasonably prudent medical provider would use, but Defendants also acted with a wanton and reckless disregard of the likely consequences of their actions. In other words, when Defendants failed to provide the care and treatment within the applicable standard of care, they acted with a wanton or reckless disregard of the fact that Plaintiff and Class Members' injuries would likely result from their actions.

82.     As a further direct and legal result of the foresaid, Plaintiff and Class Members sustained damages in a sum according to proof at trial.

83.     By virtue of the foresaid, Defendants have each acted with intent and recklessness, and their acts and omissions were despicable. By virtue of the foresaid, punitive damages should be assessed against Defendants and each of them, in a sum according to proof at trial.

## SECOND CAUSE OF ACTION
### Unfair Competition (Bus. & Prof. Code, § 17200)
### (Against all Defendants)

84.     Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

85.     Bus. & Prof. Code, § 17200 provides, "[U]nfair competition shall mean and include

22

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

1   any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or

2   misleading advertising."

3   86.    In order to increase profits and lower costs, Defendants misled Plaintiff and Class

4   Members about the benefits of PD and downplayed the dangers of PD, convincing Plaintiff and

5

6   Class Members to undergo PD treatment to their detriment.

7   87.    Defendants' scheme to mislead Plaintiff and Class Members about PD and profit as

8   a result, constitutes unlawful, unfair, and fraudulent business practices pursuant to Bus. & Prof.

9   Code, § 17200.

10   88.    As a direct and legal result of the foresaid, Plaintiff and Class Members sustained

11   damages in a sum according to proof at trial.

12                              **THIRD CAUSE OF ACTION**
13                   **False Advertising (Bus. & Prof. Code, § 17500)**
                                **(Against all Defendants)**
14

15   89.    Plaintiff realleges and incorporates by reference all of the allegations contained in

16   the preceding paragraphs as though fully set forth herein.

17   90.    Bus. & Prof. Code, § 17500 provides, "It is unlawful for any person, firm,

18   corporation or association, or any employee thereof with intent directly or indirectly . . . to perform

19   services, professional or otherwise, or anything of any nature whatsoever or to induce the public to

20   enter into any obligation relating thereto, to make or disseminate or cause to be made or

21   disseminated before the public in this state, or to make or disseminate or cause to be made or

22

23   disseminated from this state before the public in any state, in any newspaper or other publication,

24   or any advertising device, or by public outcry or proclamation, or in any other manner or means

25   whatever, including over the Internet, any statement, concerning . . . those services, professional or

26   otherwise, or concerning any circumstance or matter of fact connected with the proposed

27   performance or disposition thereof, which is untrue or misleading, and which is known, or which

28

by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

91.    In order to increase profits and lower costs, Defendants distributed misleading marketing materials and slogans concerning PD to Plaintiff and Class Members, and further made false and misleading claims to Plaintiff and Class Members about the benefits of PD.

92.    Defendants knew, or by the exercise of reasonable care, should have known, that their marketing materials, slogans, and claims concerning PD were untrue or misleading.

93.    Defendants' distribution of misleading marketing materials, slogans, and false claims concerning PD constitutes a violation of Bus. & Prof. Code, § 17500.

94.    As a direct and legal result of the foresaid, Plaintiff and Class Members sustained damages in a sum according to proof at trial.

95.    Plaintiff and Class Members seek to recover the statutory remedy of $2,500 per violation.

## FOURTH CAUSE OF ACTION
### Concealment
### (Against Defendant DaVita Inc.)

96.    Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

97.    DaVita owed a fiduciary duty to Plaintiff and Class Members, and thus had a duty to disclose the dangers and harms of PD, and DaVita intentionally failed to fully disclose the dangers and harms of PD to Plaintiff and Class Members.

98.    DaVita disclosed perceived advantages and benefits of PD to Plaintiff and Class Members, but intentionally failed to fully disclose the dangers and harms of PD to Plaintiff and Class Members, making the disclosure deceptive.

99.    Plaintiff and Class Members did not know of the dangers and harms of PD.

100.    DaVita intended to deceive Plaintiff and Class Members by concealing the dangers

CLASS ACTION COMPLAINT

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

and harms of PD.

101.    Had the dangers and harms of PD been fully disclosed, Plaintiff and Class Members reasonably would have behaved differently and not opted for PD treatment.

102.    As a direct and legal result of the foresaid, Plaintiff and Class Members sustained damages in a sum according to proof at trial.

103.    DaVita's concealment was a substantial factor in causing Plaintiff and Class Members' harm.

104.    By virtue of the foresaid, DaVita acted with recklessness, oppression, and malice in that it acted in conscious disregard of the of the rights and safety of Plaintiff and Class Members, was despicable, and subjected Plaintiff and Class Members to cruel and unjust hardship. By virtue of the foresaid, punitive damages should be assessed against DaVita, in a sum according to proof at trial.

### FIFTH CAUSE OF ACTION
### Intentional Misrepresentation
### (Against All Defendants)

105.    Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

106.    Defendants represented to Plaintiff and Class Members a list of supposed benefits of PD.

107.    Defendants' representations concerning the benefits of PD were false or misleading.

108.    Defendants knew that their representations were false when they made it, or they made the representation recklessly and without regard for its truth.

109.    Defendants intended that Plaintiff and Class Members rely on their representations.

110.    Plaintiff and Class Members reasonably relied on Defendants' representations.

111.    As a direct and legal result of the foresaid, Plaintiff and Class Members sustained

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

1    damages in a sum according to proof at trial.

2    112.    Plaintiff and Class Members' reliance on Defendants' representations was a

3    substantial factor in causing Plaintiff and Class Members' harm.

4    113.    By virtue of the foresaid, Defendants acted with recklessness, oppression, and

5    malice in that they acted in conscious disregard of the of the rights and safety of Plaintiff and Class

6    Members, were despicable, and subjected Plaintiff and Class Members to cruel and unjust hardship.

7    By virtue of the foresaid, punitive damages should be assessed against Defendants, and each of

8    them, in a sum according to proof at trial.

9

10   ### SIXTH CAUSE OF ACTION
### Negligent Misrepresentation
### (Against All Defendants)

11

12   114.    Plaintiff realleges and incorporates by reference all of the allegations contained in

13   the preceding paragraphs as though fully set forth herein.

14

15   115.    Defendants represented to Plaintiff and Class Members a list of supposed benefits

16   of PD.

17   116.    Defendants' representations concerning the benefits of PD were false or misleading.

18   117.    Defendants had no reasonable grounds for believing their representations were true

19   when they made them.

20   118.    Defendants intended that Plaintiff and Class Members rely on their representations.

21   119.    Plaintiff and Class Members reasonably relied on Defendants' representations.

22

23   120.    As a direct and legal result of the foresaid, Plaintiff and Class Members sustained

24   damages in a sum according to proof at trial.

25   121.    Plaintiff and Class Members' reliance on Defendants' representations was a

26   substantial factor in causing Plaintiff and Class Members' harm.

27

28

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

**SEVENTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(Against Defendant DaVita Inc.)**

122.    Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

123.    DaVita owed fiduciary duties to Plaintiff and Class Members.

124.    DaVita breached its fiduciary duties to Plaintiff and Class Members by failing to disclose all material facts concerning PD treatment, including PD's dangers and disadvantages.

125.    As a direct and legal result of the foresaid, Plaintiff and Class Members sustained damages in a sum according to proof at trial.

126.    By virtue of the foresaid, DaVita acted with recklessness, oppression, and malice in that it acted in conscious disregard of the of the rights and safety of Plaintiff and Class Members, was despicable, and subjected Plaintiff and Class Members to cruel and unjust hardship. By virtue of the foresaid, punitive damages should be assessed against DaVita, in a sum according to proof at trial.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1.    For an order certifying this case as a Class Action;

2.    For an order appointing Plaintiff as Class representative and appointing Plaintiff's counsel as class counsel;

3.    For economic damages according to proof, no less than one billion dollars;

4.    For general damages according to proof at trial, no less than one billion dollars;

5.    For compensatory damages according to proof at trial, no less than one billion dollars;

6.    For special damages according to proof at trial, no less than one billion dollars;

7.    For reasonable attorneys' fees;

CLASS ACTION COMPLAINT

8.      For exemplary and punitive damages according to proof at trial, no less than one billion dollars;

9.      For costs of suit incurred herein;

10.    For statutory penalties;

11.    For civil penalties;

12.    For pre-judgment interest;

13.    For such other relief as the court deems proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all issues so triable in the Complaint.

DATED: October 8, 2025                    **BEROKIM LAW**

---------------------------------------------------------
KOUSHA BEROKIM
Attorneys for Plaintiff Victor Sanchez and
on behalf of himself and all others similarly situated

CLASS ACTION COMPLAINT

BEROKIM LAW
Attorneys
270 North Canon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Kousha Berokim SBM 242761<br>270 N Canon Dr, Fl 3, Beverly Hills, CA 90210<br><br>TELEPHONE NO.: (310) 846-8553   FAX NO. *(Optional)*:<br>E-MAIL ADDRESS: berokim@berokim.com<br>ATTORNEY FOR *(Name)*: Plaintiff Victor Sanchez | **Electronically FILED by**<br>**Superior Court of California,**<br>**County of Los Angeles**<br>**10/08/2025 11:59 AM**<br>**David W. Slayton,**<br>**Executive Officer/Clerk of Court,**<br>**By J. Covarrubias, Deputy Clerk** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Sanchez v. DaVita Inc., et. al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 25STCV29466 |
| | | | | JUDGE:<br><br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[x] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [x] Large number of separately represented parties          d. [x] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel     e. [ ] Coordination with related actions pending in one or more
          issues that will be time-consuming to resolve                 courts in other counties, states, or countries, or in a federal court
   c. [x] Substantial amount of documentary evidence              f. [x] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify)*: Seven (7)
5. This case [x] is [ ] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: October 8, 2025
Kousha Berokim

_____
(TYPE OR PRINT NAME)

▶

_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |
|---|---|---|

CM-010

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Sanchez v. DaVita Inc., et. al. | 25STCV29466 |

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1. Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7. Location where petitioner resides. |
| 2. Permissive filing in Central District. | 8. Location wherein defendant/respondent functions wholly. |
| 3. Location where cause of action arose. | 9. Location where one or more of the parties reside. |
| 4. Location where bodily injury, death or damage occurred. | 10. Location of Labor Commissioner Office. |
| 5. Location where performance required, or defendant resides. | 11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6. Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Sanchez v. DaVita Inc., et. al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☑ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Sanchez v. DaVita Inc., et. al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br>Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

LASC CIV 109 Rev. 01/23            **CIVIL CASE COVER SHEET ADDENDUM**            LASC Local Rule 2.3
For Mandatory Use                        **AND STATEMENT OF LOCATION**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Sanchez v. DaVita Inc., et. al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Sanchez v. DaVita Inc., et. al. | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON: | ADDRESS: |
|---|---|
| ☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | |

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| | | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: __10/08/2025__                            _____

(SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>10/08/2025<br><br>David W. Slayton, Executive Officer / Clerk of Court<br><br>By: _____ J. Covarrubias _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>25STCV29466 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Timothy Patrick Dillon | 15 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on _10/08/2025_____
      (Date)

David W. Slayton, Executive Officer / Clerk of Court

By _J. Covarrubias_____, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Kousha Berokim, Esq. (SBN 242763)<br>BEROKIM LAW<br>270 N Canon Drive, 3rd Floor<br>Beverly Hills, CA 90210<br>    TELEPHONE NO.: 310-993-3703    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* Berokim@Berokim.com<br>ATTORNEY FOR *(Name):* Plaintiff, Victor Sanchez | *FOR COURT USE ONLY*<br><br>**Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>10/13/2025 12:41 PM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By S. Trinh, Deputy Clerk** |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles<br>    STREET ADDRESS: 111 N. Hill Street<br>    MAILING ADDRESS:<br>    CITY AND ZIP CODE: Los Angeles, CA 90012<br>    BRANCH NAME: Stanley Mosk Courthouse | |
| PLAINTIFF/PETITIONER: Victor Sanchez<br><br>DEFENDANT/RESPONDENT: Davita Inc., et. al. | CASE NUMBER:<br>25STCV29466 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.
2.  I served copies of:
    a.  [✓] summons
    b.  [✓] complaint
    c.  [ ] Alternative Dispute Resolution (ADR) package
    d.  [ ] Civil Case Cover Sheet *(served in complex cases only)*
    e.  [ ] cross-complaint
    f.  [ ] other *(specify documents):*

3.  a.  Party served *(specify name of party as shown on documents served):*
        Davita Inc., a Delaware corporation

    b.  [✓] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
        CSC-Corporation Service Company, c/o Koy Saechao, Registered Agent for Service of Process

4.  Address where the party was served:
    2710 Gateway Oaks Dr # 150, Sacramento, CA 95833
5.  I served the party *(check proper box)*
    a.  [✓] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* October 10, 2025  (2) at *(time):* 1:30 p.m.
    b.  [ ] **by substituted service.** On *(date):*            at *(time):*        I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

        (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

        (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

        (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

        (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*        from *(city):*        **or** [ ] a declaration of mailing is attached.

        (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

| PLAINTIFF/PETITIONER: Victor Sanchez | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Davita Inc., et. al. | 25STCV29466 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date)*:                    (2) from *(city)*:

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section)*:

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify)*:
  c. ☐ as occupant.
  d. ☑ On behalf of *(specify)*:  Davita Inc., a Delaware corporation
    under the following Code of Civil Procedure section:

    ☑ 416.10 (corporation)             ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)       ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)             ☐ 415.46 (occupant)
                                    ☐ other:

7. **Person who served papers**
  a. Name:  Johnny Adams/ All- City Legal, Inc.
  b. Address:  2934 1/2 Beverly Glen Circle, Suite 303, Bel-Air, CA 90077
  c. Telephone number:  310-642-7777
  d. **The fee** for service was: $ 95.00
  e. I am:

    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☑ a registered California process server:
      (i) ☐ owner ☐ employee ☑ independent contractor.
      (ii) Registration No.: 2015117502
      (iii) County: Los Angeles

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal** and I certify that the foregoing is true and correct.

Date: October 13, 2025

Johnny Adams
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)    ▶            (SIGNATURE )

POS-010 [Rev. January 1, 2007]        **PROOF OF SERVICE OF SUMMONS**        Page 2 of 2

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**



*Superior Court of California, County of Los Angeles*
**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE**

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS MUST SERVE THIS ADR INFORMATION PACKAGE ON ANY NEW PARTIES NAMED TO THE ACTION WITH THE CROSS-COMPLAINT.**

**WHAT IS ADR?**
Alternative Dispute Resolution (ADR) helps people find solutions to their legal disputes without going to trial. The Court offers a variety of ADR resources and programs for various case types.

**TYPES OF ADR**

- **Negotiation.** Parties may talk with each other about resolving their case at any time. If the parties have attorneys, they will negotiate for their clients.

- **Mediation.** Mediation may be appropriate for parties who want to work out a solution but need help from a neutral third party. A mediator can help the parties reach a mutually acceptable resolution. Mediation may be appropriate when the parties have communication problems and/or strong emotions that interfere with resolution. Mediation may not be appropriate when the parties want a public trial, lack equal bargaining power, or have a history of physical or emotional abuse.

- **Arbitration.** Less formal than a trial, parties present evidence and arguments to an arbitrator who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.

- **Settlement Conferences.** A judge or qualified settlement officer assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Mandatory settlement conferences may be ordered by a judicial officer. In some cases, voluntary settlement conferences may be requested by the parties.

**ADVANTAGES OF ADR**

- **Save time and money.** Utilizing ADR methods is often faster than going to trial and parties can save on court costs, attorney's fees, and other charges.
- **Reduce stress and protect privacy.** ADR is conducted outside of a courtroom setting and does not involve a public trial.
- **Help parties maintain control.** For many types of ADR, parties may choose their ADR process and provider.

**DISADVANTAGES OF ADR**

- **Costs.** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial.** ADR does not provide a public trial or decision by a judge or jury.

**WEBSITE RESOURCES FOR ADR**

- **Los Angeles Superior Court ADR website:** www.lacourt.org/ADR
- **California Courts ADR website:** www.courts.ca.gov/programs-adr.htm

**Los Angeles Superior Court ADR Programs for Unlimited Civil (cases valued over $35,000)**
Litigants should closely review the requirements for each program and the types of cases served.

- **Civil Mediation Vendor Resource List.** Litigants in unlimited civil cases may use the Civil Mediation Vendor Resource List to arrange voluntary mediations without Court referral or involvement. The Resource List includes organizations that have been selected through a formal process that have agreed to provide a limited number of low-cost or no-cost mediation sessions with attorney mediators or retired judges. Organizations may accept or decline cases at their discretion. Mediations are scheduled directly with these organizations and are most often conducted through videoconferencing. The organizations on the Resource List target active civil cases valued between $50,000-$250,000, though cases outside this range may be considered. *For more information and to view the list of vendors and their contact information, download the Resource List Flyer and FAQ Sheet at www.lacourt.org/ADR/programs.html.*
  **RESOURCE LIST DISCLAIMER:** The Court provides this list as a public service. The Court does not endorse, recommend, or make any warranty as to the qualifications or competency of any provider on this list. Inclusion on this list is based on the representations of the provider. The Court assumes no responsibility or liability of any kind for any act or omission of any provider on this list.

- **Mediation Volunteer Panel (MVP).** Unlimited civil cases referred by judicial officers to the Court's Mediation Volunteer Panel (MVP) are eligible for three hours of virtual mediation at no cost with a qualified mediator from the MVP. Through this program, mediators volunteer preparation time and three hours of mediation at no charge. If the parties agree to continue the mediation after three hours, the mediator may charge their market hourly rate. When a case is referred to the MVP, the Court's ADR Office will provide information and instructions to the parties. The Notice directs parties to meet and confer to select a mediator from the MVP or they may request that the ADR Office assign them a mediator. The assigned MVP mediator will coordinate the mediation with the parties. *For more information or to view MVP mediator profiles, visit the Court's ADR webpage at www.lacourt.org/ADR or email ADRCivil@lacourt.org.*

- **Mediation Center of Los Angeles (MCLA) Referral Program.** The Court may refer unlimited civil cases to mediation through a formal contract with the Mediation Center of Los Angeles (MCLA), a nonprofit organization that manages a panel of highly qualified mediators. Cases must be referred by a judicial officer or the Court's ADR Office. The Court's ADR Office will provide the parties with information for submitting the case intake form for this program. MCLA will assign a mediator based on the type of case presented and the availability of the mediator to complete the mediation in an appropriate time frame. MCLA has a designated fee schedule for this program. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

- **Resolve Law LA (RLLA) Virtual Mandatory Settlement Conferences (MSC).** Resolve Law LA provides three-hour virtual Mandatory Settlement Conferences at no cost for personal injury and non-complex employment cases. Cases must be ordered into the program by a judge pursuant to applicable Standing Orders issued by the Court and must complete the program's online registration process. The program leverages the talent of attorney mediators with at least 10 years of litigation experience who volunteer as settlement officers. Each MSC includes two settlement officers, one each from the plaintiff and defense bars. Resolve Law LA is a joint effort of the Court, Consumer Attorneys Association of Los Angeles County (CAALA), Association of Southern California Defense Counsel (ASCDC), Los Angeles Chapter of the American Board of Trial Advocates (LA-ABOTA), Beverly Hills Bar Foundation (BHBF), California Employment Lawyers Association (CELA), and Los Angeles County Bar Association (LACBA). *For more information, visit https://resolvelawla.com.*

- **Judicial Mandatory Settlement Conferences (MSCs).** Judicial MSCs are ordered by the Court for unlimited civil cases and may be held close to the trial date or on the day of trial. The parties and their attorneys meet with a judicial officer who does not make a decision, but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For more information, visit https://www.lacourt.org/division/civil/CI0047.aspx.

**Los Angeles Superior Court ADR Programs for Limited Civil (cases valued below $35,000)**
Litigants should closely review the requirements for each program and the types of cases served.

- **Online Dispute Resolution (ODR).** Online Dispute Resolution (ODR) is a free online service provided by the Court to help small claims and unlawful detainer litigants explore settlement options before the hearing date without having to come to court. ODR guides parties through a step-by-step program. After both sides register for ODR, they may request assistance from trained mediators to help them reach a customized agreement. The program creates settlement agreements in the proper form and sends them to the Court for processing. Parties in small claims and unlawful detainer cases must carefully review the notices and other information they receive about ODR requirements that may apply to their case. *For more information, visit https://my.lacourt.org/odr.*

- **Dispute Resolution Program Act (DRPA) Day-of-Hearing Mediation.** Through the Dispute Resolution Program Act (DRPA), the Court works with county-funded agencies, including the Los Angeles County Department of Consumer & Business Affairs (DCBA) and the Center for Conflict Resolution (CCR), to provide voluntary day-of-hearing mediation services for small claims, unlawful detainer, limited civil, and civil harassment matters. DCBA and CCR staff and trained volunteers serve as mediators, primarily for self-represented litigants. There is no charge to litigants. *For more information, visit https://dcba.lacounty.gov/countywidedrp.*

- **Temporary Judge Unlawful Detainer Mandatory Settlement Conference Pilot Program.** Temporary judges who have been trained as settlement officers are deployed by the Court to designated unlawful detainer court locations one day each week to facilitate settlement of unlawful detainer cases on the day of trial. For this program, cases may be ordered to participate in a Mandatory Settlement Conference (MSC) by judicial officers at Stanley Mosk, Long Beach, Compton, or Santa Monica. Settlement rooms and forms are available for use on the designated day at each courthouse location. There is no charge to litigants for the MSC. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

**FILED**
Superior Court of California
County of Los Angeles

**10/28/2025**

David W. Slayton, Executive Officer / Clerk of Court

By: _____L. Ennis_____ Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

CENTRAL DISTRICT

| | |
|---|---|
| VICTOR SANCHEZ | Case No.  25STCV29466 |
| Plaintiff, | INITIAL STATUS CONFERENCE ORDER (COMPLEX LITIGATION PROGRAM) |
| vs. | |
| DAVITA INC., et al. | Case Assigned for All Purposes to Judge Timothy Patrick Dillon |
| Defendants. | Department: 15<br>Date:        January 23, 2026<br>Time:        10:00 a.m. |

This case has been assigned for all purposes to Judge Timothy Patrick Dillon in the Complex Litigation Program and has been designated as complex pursuant to CRC 3.400(a). It thus requires exceptional judicial management. Accordingly, all provisions of this Initial Status Conference are deemed necessary to carry out the purposes of Rule 3.400(a), and to promote effective decision-making by the Court. They are based upon individual consideration of this complex action.

The parties MUST sign up with an e- service provider at least ten court days in advance of the Initial Status Conference and advise the Court, via email to sscdept15@lacourt.org, which provider was selected.

An Initial Status Conference is set for **January 23, 2026, at 10:00 a.m., in Department**

INITIAL STATUS CONFERENCE ORDER

**15** located in the **Spring Street Courthouse,** at United States District Court, at 312 N. Spring Street, Los Angeles, California 90012.  Counsel for all the parties are ordered to attend.

The Court orders counsel to prepare for the Initial Status Conference by identifying and discussing the central legal and factual issues in the case.  Counsel for plaintiff is ordered to initiate contact with counsel for defense to begin this process. Counsel then must negotiate and agree, as possible, on a case management plan.  To this end, counsel must file a Joint Initial Status Conference Class Action Response Statement five (5) court days **(January 16, 2026)** before the Initial Status Conference.  The Joint Response Statement must be filed on line-numbered pleading paper and must specifically answer each of the below-numbered questions. Do not the use the Judicial Council Form CM-110 (Case Management Statement) for this purpose.

1. **PARTIES AND COUNSEL:**  Please list all presently-named class representatives and presently-named defendants, together with all counsel of record, including counsel's contact and email information.

2. **POTENTIAL ADDITIONAL PARTIES:**  Does any plaintiff presently intend to add more class representatives?  If so, and if known, by what date and by what name?  Does any plaintiff presently intend to name more defendants?  If so, and if known, by what date and by what name?  Does any appearing defendant presently intend to file a cross-complaint?  If so, who will be named.

3. **IMPROPERLY NAMED DEFENDANT(S):**  If the complaint names the wrong person or entity, please explain.

4. **ADEQUACY OF PROPOSED CLASS REPRESENTATIVE(S):**  If any party believes one or more named plaintiffs might not be an adequate class representative, please explain.  No prejudice will attach to these responses.

5. **ESTIMATED CLASS SIZE:**  Please discuss and indicate the estimated class size.

-2-

**6. OTHER ACTIONS WITH OVERLAPPING CLASS DEFINITIONS:** Please list other cases with overlapping class definitions. Please identify the court, the short caption title, the docket number, and the case status.

**7. POTENTIALLY RELEVANT ARBITRATION AND/OR CLASS ACTION WAIVER CLAUSES:** Please include a sample of any clause of this sort. Opposing parties must summarize their views on this issue.

**8. POTENTIAL EARLY CRUCIAL MOTIONS:** Opposing counsel are to identify and describe the significant core issues in the case. Counsel then are to identify efficient ways to resolve those issues. The vehicles include:

- Early motions in limine,
- Early motions about particular jury instructions,
- Demurrers,
- Motions to strike,
- Motions for judgment on the pleadings, and
- Motions for summary judgment and summary adjudication.

**9. CLASS CONTACT INFORMATION:** Does plaintiff need class contact information from the defendant's records? If so, do the parties consent to an "opt-out" notice process (as approved in *Belaire-West Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554, 561) to precede defense delivery of this information to plaintiff's counsel? If the parties agree on the notice process, who should pay for it? Should there be a third-party administrator?

**10. PROTECTIVE ORDERS:** Parties considering an order to protect confidential information from general disclosure should begin with the model protective orders found on the Los Angeles Superior Court Website under "Civil Tools for Litigators."

**11. DISCOVERY:** Please discuss discovery. Do the parties agree on a plan? If not, can

-3-

the parties negotiate a compromise?  At minimum, please summarize each side's views on discovery.   The Court generally allows discovery on matters relevant to class certification, which (depending on circumstances) may include factual issues also touching the merits.  The Court generally does not permit extensive or expensive discovery relevant only to the merits (for example, detailed damages discovery) unless a persuasive showing establishes early need.  If any party seeks discovery from absent class members, please estimate how many, and also state the kind of discovery you propose[1].

**12.  INSURANCE COVERAGE:**  Please state if there is insurance for indemnity or reimbursement.

**13.  ALTERNATIVE DISPUTE RESOLUTION:**  Please discuss ADR and state each party's position about it.  If pertinent, how can the Court help identify the correct neutral and prepare the case for a successful settlement negotiation?

**14.  TIMELINE FOR CASE MANAGEMENT:**  Please recommend dates and times for the following:

- ■ The next status conference,
- ■ A schedule for alternative dispute resolution, if it is relevant,
- ■ A filing deadline for the motion for class certification, and
- ■ Filing deadlines and descriptions for other anticipated non-discovery motions.

**15.  ELECTRONIC SERVICE OF PAPERS:**  For efficiency the complex program requires the parties in every new case to use a third-party cloud service. While the parties are free to choose one of the services shown below, this Court (Department 15) prefers that the parties select:

_____

[1] See California Rule of Court, Rule 3.768.

-4-

■ **Case Anywhere (http://www.caseanywhere.com).**

The parties are not required to select Case Anywhere, but may choose instead

■ File & Serve Xpress (https://secure.fileandserveexpress.com)

Please agree on one and submit the parties' choice when filing the Joint Initial Status Conference Class Action Response Statement.  If there is agreement, please identify the vendor. If parties cannot agree, the Court will select the vendor at the Initial Status Conference.  Electronic service is not the same as electronic filing.  Pursuant to Los Angeles Superior Court, rule 3.4(a), represented litigants are required to electronically file documents with the Court through an approved Electronic Filing Service Provider.

**Reminder When Seeking To Dismiss Or To Obtain Settlement Approval:**

"A dismissal of an entire class action, or of any party or cause of action in a class action, requires Court approval . . .  Requests for dismissal must be accompanied by a declaration setting forth the facts on which the party relies. The declaration must clearly state whether consideration, direct or indirect, is being given for the dismissal and must describe the consideration in detail."[2] If the parties have settled the class action, that too will require judicial approval based on a noticed motion (although it may be possible to shorten time by consent for good cause shown).

Pending further order of this Court, and except as otherwise provided in this Initial Status Conference Order, these proceedings are stayed in their entirety. **THIS STAY SHALL PRECLUDE THE FILING OF ANY AMENDED COMPLAINT, ANSWER, DEMURRER, MOTION TO STRIKE, OR MOTIONS CHALLENGING THE JURISDICTION OF THE COURT.**

However, any defendant may file a Notice of Appearance for purposes of identification of

---

[2] California Rule of Court, Rule 3.770(a)

1  counsel and preparation of a service list. The filing of such a Notice of Appearance shall be
2  without prejudice to any challenge to the jurisdiction of the Court, substantive or procedural
3  challenges to the Complaint, without prejudice to any affirmative defense, and without prejudice
4  to the filing of any cross-complaint in this action. This stay is issued to assist the Court and the
5  parties in managing this "complex" case through the development of an orderly schedule for
6  briefing and hearings on procedural and substantive challenges to the complaint and other issues
7  that may assist in the orderly management of these cases.  This stay shall not preclude the parties
8  from informally exchanging documents that may assist in their initial evaluation of the issues
9
10 presented in this case, however, shall stay all outstanding discovery requests.

11          Plaintiff's counsel is directed to serve a copy of this Initial Status Conference Order on
12 counsel for all parties, or if counsel has not been identified, on all parties, within five (5) days of
13 service of this order. If any defendant has not been served in this action, service is to be completed
14 within twenty (20) days of the date of this order.
15
16      Dated: 10/28/2025                      
17
18                                                 Timothy Patrick Dillon / Judge
19                                          Judge Timothy Patrick Dillon
20
21
22
23
24
25
26
27
28

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Spring Street Courthouse, Department 15

**25STCV29466**                                                        October 28, 2025
**VICTOR SANCHEZ vs DAVITA INC., et al.**                                    1:56 PM

Judge: Honorable Timothy Patrick Dillon          CSR: None
Judicial Assistant: L. Ennis                     ERM: None
Courtroom Assistant: None                        Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order Re: Newly Filed Class Action

By this order, the Court determines this case to be Complex according to Rule 3.400 of the
California Rules of Court. The Clerk's Office has assigned this case to this department for all
purposes.

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one
thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex
fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent
or adverse party, not to exceed, for each separate case number, a total of eighteen thousand
dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties.
All such fees are ordered to be paid to Los Angeles Superior Court, within ten (10) days of
service of this order.

By this order, the Court stays the case, except for service of the Summons and Complaint. The
stay continues at least until the Initial Status Conference. Initial Status Conference is set for
01/23/2026 at 10:00 AM in this department. At least ten (10) days prior to the Initial Status
Conference, counsel for all parties must discuss the issues set forth in the Initial Status
Conference Order issued this date. Counsel must file a Joint Initial Status Conference Response
Statement five (5) court days before the Initial Status Conference.

The Initial Status Conference Order, served concurrently with this Minute Order, is to help the
Court and the parties manage this complex case by developing an orderly schedule for briefing,
discovery, and court hearings. The parties are informally encouraged to exchange documents and
information as may be useful for case evaluation.

Responsive pleadings shall not be filed until further Order of the Court. Parties must file a Notice
of Appearance in lieu of an Answer or other responsive pleading. The filing of a Notice of
Appearance shall not constitute a waiver of any substantive or procedural challenge to the
Complaint. Nothing in this order stays the time for filing an Affidavit of Prejudice pursuant to

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 15

**25STCV29466**                                              October 28, 2025
**VICTOR SANCHEZ vs DAVITA INC., et al.**                          1:56 PM

Judge: Honorable Timothy Patrick Dillon        CSR: None
Judicial Assistant: L. Ennis                   ERM: None
Courtroom Assistant: None                      Deputy Sheriff: None

Code of Civil Procedure Section 170.6. Nothing in this order stays the filing of an Amended Complaint pursuant to Labor Code Section 2699.3(a)(2)(C) by a plaintiff wishing to add a Private Attorney General Act ("PAGA") claim.

For information on electronic filing in the Complex Courts, please refer to https://www.lacourt.org/division/efiling/efiling2.aspx#civil. See, in particular, the link therein for "Complex Civil efiling." Parties shall file all documents in conformity with the Presiding Judge's First Amended General Order of May 3, 2019, particularly including the provisions therein requiring Bookmarking with links to primary documents and citations; that Order is available on the Court's website at the link shown above.

For efficiency in communication with counsel, the complex program requires the parties in every new case to use an approved third-party cloud service that provides an electronic message board. In order to facilitate communication with counsel prior to the Initial Status Conference, the parties must sign-up with the e-service provider at least ten (10) court days in advance of the Initial Status Conference and advise the Court which provider was selected.

The court has implemented LACourtConnect to allow attorneys, self-represented litigants and parties to make audio or video appearances in Los Angeles County courtrooms. LACourtConnect technology provides a secure, safe and convenient way to attend hearings remotely. A key element of the Court's Access LACourt YOUR WAY program to provide services and access to justice, LACourtConnect is intended to enhance social distancing and change the traditional in-person courtroom appearance model. See https://my.lacourt.org/laccwelcome for more information.

This Complex Courtroom does not use Los Angeles Superior Court's Court Reservation ("CRS") portal to reserve motion hearing dates. Rather, counsel may secure dates by calling the Courtroom Assistant at 213-310-70xx with the "xx" being the Department number, e.g. Dept. 1 is 01 and Dept. 10 is 10.

Court reporters are not provided for hearings or trials. The parties should make their own arrangements for any hearing where a transcript is desired.

If you believe a party or witness will need an interpreter, see the court's website for information on how to make such a request in a timely manner. https://www.lacourt.org/irud/UI/index.aspx

Counsel are directed to access the following link for further information on procedures in the Complex litigation Program courtrooms: https://www.lacourt.org/division/civil/CI0042.aspx.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Spring Street Courthouse, Department 15

**25STCV29466**                                                  October 28, 2025
**VICTOR SANCHEZ vs DAVITA INC., et al.**                          1:56 PM

Judge: Honorable Timothy Patrick Dillon          CSR: None
Judicial Assistant: L. Ennis                     ERM: None
Courtroom Assistant: None                        Deputy Sheriff: None

---

The plaintiff must serve a copy of this minute order and the attached Initial Status Conference Order on all parties forthwith and file a Proof of Service in this department within five (5) days of service.

The Judicial Assistant hereby gives notice to Plaintiff, who is to give further and formal notice.

Certificate of Service is attached.

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
Spring Street Courthouse
312 North Spring Street, Los Angeles, CA, 90012

PLAINTIFF(S)/PETITIONER(S):
Victor Sanchez,

DEFENDANT(S)/RESPONDENT(S):
DaVita Inc., et al.

FOR COURT USE ONLY

**FILED**
Superior Court of California
County of Los Angeles
10/28/2025
David W. Slayton, Executive Officer / Clerk of Court
By: _____ L. Ennis _____ Deputy

## CLERK'S CERTIFICATE OF SERVICE
## BY ELECTRONIC SERVICE

CASE NUMBER:

25STCV29466

I, David W. Slayton, Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein and that on this date I served the

**Minute Order of 10/28/2025**
**Initial Status Conference Order of 10/28/2025**

upon each party or counsel of record in the above entitled action by electronically serving to the party or parties at the electronic address as listed below:

**"Kousha Berokim" <kberokim@gmail.com>**

The electronic transmission originated from the Superior Court of California, County of Los Angeles email address eService-DoNotReply@lacourt.org at the Spring Street Courthouse, 312 North Spring Street, Los Angeles, CA, 90012.

Dated: 10/28/2025

David W. Slayton, Executive Officer / Clerk of Court

By: L. Ennis _____

Deputy Clerk

**Page 1 of 1**

## CLERK'S CERTIFICATE OF SERVICE BY ELECTRONIC SERVICE

1
2
Kousha Berokim | SBN 242763
**BEROKIM LAW**
3
270 North Cañon Drive, Third Floor
Beverly Hills, California 90210
4
T (310) 846.8553 | F (310) 300-1233
berokim@berokim.com
5
Attorneys for Plaintiff Victor Sanchez and
on behalf of himself and all others similarly situated

Electronically FILED by
Superior Court of California,
County of Los Angeles
11/05/2025 9:54 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By M. Aguirre, Deputy Clerk

6
7
8
**SUPERIOR COURT OF CALIFORNIA**
9
**FOR THE COUNTY OF LOS ANGELES**
10
11
VICTOR SANCHEZ, an individual and on
behalf of all others similarly situated,
12
13
                    Plaintiff,
14
            v.
15
DAVITA INC., a Delaware corporation;
MARTHA TASHJIAN, an individual;
16
SHELLY MARTINEZ, an individual; and
Does 1 to 100, inclusive,
17
18
                    Defendants.
19
20
21
//
22
23
//
24
25
26
//
27
28
//

**Case Number: 25STCV29466**

**PLAINTIFF'S PROOF OF SERVICE
RE: MINUTE ORDER AND INITIAL
STATUS CONFERENCE ORDER**

1

PLAINTIFF'S PROOF OF SERVICE RE: MINUTE ORDER AND INITIAL STATUS CONFERENCE ORDER

1
2

## <u>PROOF OF SERVICE</u>

3
4

     I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 270 North Cañon Drive, Third Floor, Beverly Hills, California, 90210. On **November 5, 2025**, I served the herein described document(s) through the means indicated below.

5
6

### MINUTE ORDER

7

### INITIAL STATUS CONFERENCE ORDER

8
9

MAIL - by transmitting via mail the document(s) listed above to the addresses set forth below.

10

Davita Inc., a Delaware corporation
CSC-Corporation Service Company, c/o Koy Saechao, Registered Agent for Service of Process

11

2710 Gateway Oaks Dr # 150
Sacramento, CA 95833

12
13

E-MAIL - by transmitting via electronic mail the document(s) listed above to the e-mail addresses set forth below.

14
15

<u>Courtesy Copy</u>:
Matthew Pascale

16

Lewis Brisbois
633 W. 5th Street, Suite 4000, Los Angeles, CA 90071

17

Matthew.Pascale@lewisbrisbois.com

18
19
20
21

     I am readily familiar with the firm's practice of collection and processing correspondence for faxing, mailing and e-mailing. With regard to mailing, under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

22
23

     I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on **November 5, 2025** at Beverly Hills, California.

24
25
26

                       /s/Kousha Berokim

27

                  --------------------------------------------------------

28

                     Kousha Berokim

**PLAINTIFF'S PROOF OF SERVICE RE: MINUTE ORDER AND INITIAL STATUS CONFERENCE ORDER**