**BEROKIM LAW**
Kousha Berokim | SBN 242763
berokim@berokim.com
Daniel R. Shoumer | SBN 346965
shoumer@berokim.com
270 North Cañon Drive, Third Floor
Beverly Hills, California 90210
P: (310) 846-8553
F: (310) 300-1233

Attorneys for Plaintiff Victor Sanchez, on behalf of himself and all others similarly situated

FILED
CLERK, U.S. DISTRICT COURT
07/06/26
CENTRAL DISTRICT OF CALIFORNIA
BY: WH DEPUTY

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

VICTOR SANCHEZ, an individual and on behalf of all others similarly situated,

Plaintiff,

v.

DAVITA INC., a Delaware corporation; MARTHA TASHJIAN, an individual; SHELLY MARTINEZ, an individual; and Does 1 to 100, inclusive,

Defendants.

Case No. 2:25-cv-10742- HDV-AS

**(Removed from the Los Angeles County Superior Court Case No. 25STCV29466)**

**~~[PROPOSED]~~ SECOND AMENDED CLASS ACTION COMPLAINT FOR:**

1. **Negligence**
2. **Unfair Competition**
3. **False Advertising**
4. **Concealment**
5. **Intentional Misrepresentation**
6. **Negligent Misrepresentation**
7. **Breach of Fiduciary Duty**

**DEMAND FOR JURY TRIAL**

**Complaint filed: October 8, 2025**
**Date removed: November 7, 2025**

//

//

//

//

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

Plaintiff Victor Sanchez, on behalf of Plaintiff and all others similarly situated, alleges as follows:

## GENERAL ALLEGATIONS

## SUMMARY OF THE CLAIM

1. Dialysis provider, Defendant DaVita Inc. ("DaVita"), has implemented a scheme to fraudulently coerce many of its patients into receiving dialysis at home instead of at its clinics. The majority of those patients are not medically or otherwise suited for home dialysis, and in fact are subjected to unnecessary serious risk of peritonitis infection, which could be entirely eliminated through clinic dialysis.

2. To implement this scheme, DaVita has placed individuals with executive sales backgrounds and absolutely no medical background, to implement fraudulent coercive schemes to force DaVita's medical, and often non-medical, staff to target and bully vulnerable patients into receiving home dialysis, by fraudulently misrepresenting the risks of peritonitis infection.

3. For example, in Los Angeles, California, DaVita has placed a former Starbucks regional manager, Shelly Martinez, and a former Target store manager, Martha Tashjian, in higher management positions, as DaVita's Los Angeles regional manager, and as the director of one of DaVita's mega-clinics, respectively, to implement this scheme.

4. As many as forty-five percent of patients who are fraudulently forced into undergoing home dialysis experience peritonitis infection. Peritonitis infection leads to hospitalization, declining health, reduced chances of receiving a kidney transplant, and ultimately shorter life expectancy.

5. DaVita's only reason for this scheme is money. By forcing patients to receive dialysis at home, DaVita's clinic overhead for staffing is significantly reduced, while additional chairs are opened up at its clinics for new patients. At the same time, DaVita charges more for home dialysis than clinic dialysis, because home dialysis is required to be done every day, whereas clinic dialysis is usually only done about three times a week, resulting in double charges for services and supplies. Through this scheme, DaVita gains billions of dollars in profits.

6. It must be stressed at the outset of this Complaint that the subject of this claim is not home dialysis. Although, clinic dialysis is generally safer and more effective than home dialysis, for some patients, home dialysis may be proper, or even necessary. Many other patients knowingly assume the inherent risks of home dialysis as it may better suit their needs, health, and lifestyle. **Rather, this claim concerns DaVita's systematic fraudulent scheme to coerce Class Members who otherwise are not suited for home dialysis into home dialysis, through fraudulent misrepresentations about peritonitis infection, solely for significant financial profits**. These Class Members suffer peritonitis infection, and related financial, physical, and emotional damages.

## PARTIES

### A. Plaintiff

7. Plaintiff Victor Sanchez is an individual residing in Los Angeles County, California and at all relevant times to this Complaint was a patient of Defendant DaVita Inc.

### B. Defendants

8. Plaintiff is informed and believes and based thereon alleges that Defendant DAVITA INC., (hereinafter, "DaVita") is, and at all times relevant to this Complaint was, an entity engaged in the provision of dialysis treatment, conducting business in United States of America, including California.

9. Plaintiff does not know the true names or capacities of the Defendants sued as DOES 1 through 100, inclusive. Thus, Plaintiff sues these Defendants under fictitious names. When their true names and capacities have been ascertained, Plaintiff will amend this Complaint.

10. Plaintiff is informed and believes, and based thereon alleges, that the fictitiously named Defendants were the agents, servants, and employees of each of the named Defendants and, in doing the acts and things alleged, were at all times acting within the course and scope of that agency, servitude, and employment and with the permission, consent, and approval, or subsequent

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

ratification, of each of the named Defendants. Reference to "Defendants" includes the named Defendant and the DOE Defendants.

11. Plaintiff is informed and believes, and based thereon alleges, that at all material times, each of the Defendants was the agent and/or employee of each of the remaining Defendants, and each of them was at all material times acting within the purpose and scope of such agency and employment.

12. Plaintiff is informed and believe and thereon allege that there exists such a unity of interest and ownership between Defendants and Does 1 to 100 that the individuality and separateness of those entities have ceased to exist.

13. Plaintiff is informed and believe and thereon allege that there exists such a unity of interest and ownership between Defendants and Does 1 to 100 that the individuality and separateness of those Defendants have ceased to exist. The business affairs of Defendants', and Does 1 to 25 are, at all times relevant hereto were, so mixed and intermingled that the same cannot reasonably be segregated, and the same are in inextricable confusion. Defendants are, and at all times relevant hereto were used by Does 1 to 100, and each of them, as mere shells and a conduit for the conduct of certain of Defendants' affairs. The recognition of the separate existence of Defendants and Does 1 to 100, would not promote justice, in that it would permit Defendants to insulate themselves from liability to Plaintiffs. Accordingly, Defendants and Does 1 to 100, constitute the alter egos of each other, and the fiction of their separate existence must be disregarded at law and in equity because such disregard is necessary to avoid fraud and injustice to Plaintiffs herein.

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

**JOINT LIABILITY ALLEGATIONS**

14. Plaintiff is informed and believes and based thereon alleges that all the times mentioned herein, each of the Defendants was the agent, principal, employee, employer, representative, joint venture or co-conspirator of each of the other defendants, either actually or ostensibly, and in doing the things alleged herein acted within the course and scope of such agency, employment, joint venture, and conspiracy.

15. All of the acts and conduct described herein of each and every corporate defendant was duly authorized, ordered, and directed by the respective and collective defendant corporate employers, and the officers and management-level employees of said corporate employers. In addition thereto, said corporate employers participated in the aforementioned acts and conduct of their said employees, agents, and representatives, and each of them; and upon completion of the aforesaid acts and conduct of said corporate employees, agents, and representatives, the defendant corporation respectively and collectively ratified, accepted the benefits of, condoned, lauded, acquiesced, authorized, and otherwise approved of each and all of the said acts and conduct of the aforementioned corporate employees, agents and representatives.

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

## JURISDICTION

16. Jurisdiction is conferred on this Court over each Defendant named herein as each Defendant conducts business in California. Jurisdiction is conferred on this Court as to all Claims for Relief as they arise under state statutory or common law. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because DaVita conducts business in this district, is subject to personal jurisdiction in this district, and is therefore deemed to be a citizen of this district. Moreover, the unlawful acts alleged herein have a direct effect on Plaintiff and Class Members in Los Angeles County, and numerous Class Members in Los Angeles County have been patients of Defendants.

18. This Court has personal jurisdiction over DaVita because it has conducted substantial business in this judicial district and throughout the United States.

19. Plaintiffs have complied with California *Code of Civil Procedure* § 364.

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

## FACTUAL BACKGROUND

20. DaVita is a Fortune 500 corporation and one of the largest dialysis providers in the world. Dialysis is a life-sustaining treatment in which a machine takes over the work of the kidneys by removing blood, filtering it, and returning it cleansed to the body. As a healthcare company entrusted with providing life-sustaining treatment, DaVita owes its patients honesty, transparency, and care.

21. DaVita operates hundreds of outpatient dialysis clinics throughout California. At these clinics, DaVita provides hemodialysis ("clinic dialysis"). Hemodialysis is a life-sustaining treatment for kidney failure that filters waste, excess fluids, and toxins from the blood using an external machine. Hemodialysis is typically conducted three times a week for 3–4 hours per session.

22. DaVita also offers home dialysis to its patients, which is also known as Peritoneal dialysis ("PD"). PD is a needle-free, at-home treatment that uses a surgically placed abdominal catheter to infuse and drain a cleansing solution ("dialysate"), often with the aid of an automated "cycler" machine. Through this method, waste products are absorbed into the dialysate, which is then drained from the body. PD is conducted every day, and it typically lasts 8-12 hours. It is usually done throughout the night while the patient sleeps through some of the treatment.

23. DaVita, for at least the past ten (10) years and continuing to this day, has designed and executed a profit-driven scheme to fraudulently and unnecessarily coerce and trick vulnerable patients—Class Members—into PD, to maximize DaVita's revenue while exposing Class Members to severe and undisclosed risk of peritonitis infection.

24. DaVita has directed its regional and clinical directors, as well as other managing agents, to use their sales backgrounds to drive up the number of patients placed on PD treatment. Acting under DaVita's instructions, regional and clinical directors pressure not only medical

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

professionals—such as doctors and nurses—but also non-medical personnel, including social workers and receptionists, to coerce patients into choosing PD.

25. To facilitate this scheme, DaVita implemented a program called "MATCH-D," a sales campaign falsely presented as patient education. Through MATCH-D, regional and clinical directors, together with other DaVita managing agents, instruct staff to aggressively push PD on patients, even when patients voice concerns or when PD is medically inappropriate. Through MATCH-D, Defendants track DaVita's staff's forced efforts in pushing PD on patients, and use MATCH-D to provide specific messaging to coerce patients into using PD to be implemented through the assigned staff member as to each targeted patient. The driving force behind these efforts is not patient health or informed choice, but DaVita's financial gain. In other words, DaVita is not concerned about whether PD is the right choice for a particular patient; it is only concerned about increasing sales and profits, which PD would accomplish.

26. Once DaVita successfully persuades patients to undergo PD treatment, it refers those patients to physicians affiliated with DaVita to obtain orders authorizing PD. In reality, this referral is largely a formality. The purpose of directing patients to a DaVita-affiliated physician is simply to secure a signature approving the PD treatment already decided by DaVita. In many instances, these physicians are not provided with the patient's full medical records, are not informed of relevant medical considerations, and do not examine, speak with, or otherwise evaluate the patient before issuing the order. As a result, the physician's role is reduced to little more than rubber-stamping DaVita's predetermined decision to place the patient on PD.

27. As part of this ongoing campaign, regional and clinical directors, along with other DaVita managing agents, routinely coerce both medical and non-medical personnel to pressure as many patients as possible into transitioning to PD.

28. To enforce compliance, Defendants impose quotas requiring DaVita personnel to meet minimum numbers of patient conversions to PD. Staff performance is judged not by the quality of patient care, but by how many patients they could convince to switch treatments.

29. Employees who fail to meet these quotas are subjected to retaliation, intimidation, and humiliation by DaVita's managing agents and regional and clinical directors, placing their jobs at risk.

30. DaVita, through regional and clinical directors, among other managing agents, also require staff to log and track every patient who was approached about PD. Staff are instructed to record their efforts to persuade patients, note whether each patient agreed to PD, and, if not, document the reasons for refusal. These records are used to monitor and pressure employees into intensifying their sales efforts.

31. In addition, Davita, through its regional and clinical directors, hold mandatory weekly meetings with staff to review the staff's progress as to coercing targeted patients into PD, push the staff to more aggressively target patients, discuss strategies to convert more patients, guide the staff as to how to force each individual targeted patient into PD, and devise new coercive tactics. At these meetings, DaVita distributes promotional materials—including brochures and videos—to be shown directly to patients. Employees are also shown propaganda videos featuring supposed PD "success stories" and are drilled on talking points designed to mislead patients into believing PD is safer, easier, and more beneficial than it actually is.

32. To further increase patient conversions, DaVita systematically misrepresents the risks and benefits of PD to patients. Specifically, staff are instructed to tell patients that PD is generally safe, carries a low risk of infection, is no more dangerous than in-center hemodialysis, and that any risk of infection can be easily prevented. Staff are instructed to recite a scripted list of exaggerated and false claims about PD, including that PD carries a low risk of infection.

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

33. These promises are crafted to make PD sound superior to in-center dialysis, while downplaying or ignoring the reality of PD's dangers.

34. The reality is starkly different from what DaVita represents to patients. In general, and for the majority of patients, clinic-based hemodialysis is safer and more effective than PD. PD carries significant and well-documented risks that DaVita routinely misrepresents, minimizes or conceals. Chief among these risks is **peritonitis infection**, a serious and potentially life-threatening infection and inflammation of the lining of the abdominal cavity. Peritonitis occurs when bacteria enter the abdomen through the PD catheter during fluid exchanges, often as a result of contamination of the catheter or its exit site.

35. Approximately forty-five percent of PD patients experiences at least one episode of peritonitis throughout their dialysis treatment period. In contrast, clinic-based hemodialysis does not expose patients to a risk of peritonitis infection. PD Patients who develop peritonitis infection frequently require prolonged hospitalization and often suffer long-term health consequences, including a deteriorating physical condition, reduced eligibility for kidney transplantation, and shortened life expectancy.

36. PD is also generally less effective than clinic-based dialysis. Studies conducted in the United States and in comparable healthcare systems such as Australia and Canada consistently demonstrate that PD patients face a 5 to 10 percent higher risk of vascular and other serious complications compared to patients receiving clinic dialysis. These studies further show that PD patients have a 5 to 7 percent higher risk of death than those treated with clinic-based hemodialysis.

37. Yet DaVita staff routinely conceal and deny these risks, choosing instead to provide patients with false reassurances in order to secure conversions to PD. Although it is well documented that PD exposes patients to significant risks of peritonitis and other infections—

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

while clinic-based dialysis does not expose patients to any risk of peritonitis and carries a substantially lower overall infection rate—DaVita, through manipulation, concealment, and misrepresentation, regularly tells patients the opposite: that PD carries a lower infection risk than clinic dialysis.

38. DaVita further advances this deception through extensive print and digital promotional materials intended to promote PD, including directing Class Members to visit DaVita's website for additional information regarding PD and its purported benefits. In these materials, DaVita knowingly exaggerates the supposed benefits of PD while minimizing or dismissing its well-established risks. For example, DaVita labels concerns about PD's elevated infection rates and other complications as mere "myths," thereby misleading patients about the true risks of the treatment. Class Members are provided these materials directly and are encouraged to visit DaVita's website to obtain additional information about PD.

39. Class Members reasonably rely on the information contained in these materials when deciding whether to undergo PD rather than in-center hemodialysis.

40. As a representative example of this fraudulent conduct, DaVita publishes misleading information on its website and in its printed materials under the heading **"Common Myths of Peritoneal Dialysis (PD)."** In that publication, DaVita identifies as the first purported "myth" the statement: **"Myth 1: Infections are more common with PD."** DaVita then attempts to refute this assertion by claiming

> False. Peritonitis, the most common infection for people on PD, can actually be prevented with proper training and handwashing techniques.[1] If an infection does develop, it can often be treated at home with antibiotics. In fact, people on PD have a lower risk of blood infections[2] and are hospitalized less frequently than people on in-center hemodialysis (ICHD).[3] You are also more likely to get kidney transplant in the U.S. than experience of case of peritonitis.[4,5]
> [1] Firanek, C and Guest, S. *Perit Dial Int*. 2011;31(4):399-408. | [2] Dalal, P et al. *Int J Nephrol*. 2011: Article 239515.



BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

| [3] USRDS 2016 Annual Report. | [4] Chapter 6: Transplantation. United States Renal Data System website. https://www.usrds.org/2018/view/v2_06.aspx. 2018. Accessed December 12, 2018. | [5] Internal DaVita data 2018.
| [6] Lee MB, Bargman JM. Myths in peritoneal dialysis. *Curr Opin Nephrol Hypertens.* 2016 Nov;25(6):602-608.
| [7] Ahmadi SF, Zahmatkesh G, Streja E, Mehrotra R, Rhee CM, Kovesdy CP, Gillen DL, Ahmadi E, Fonarow GC, Kalantar-Zadeh K. Association of Body Mass Index With Mortality in Peritoneal Dialysis Patients: A Systematic Review and Meta-Analysis. *Perit Dial Int.* 2016 May-Jun;36(3):315-25.
(https://davita.com/treatment-options/articles/common-peritoneal-dialysis-myths-revealed/)

41. These representations are materially misleading. By characterizing the well-documented risk of infection associated with PD—particularly the risk of peritonitis—as a mere "myth," DaVita falsely minimizes and obscures the serious and potentially life-threatening dangers associated with PD. Presenting such risks as largely avoidable through simple precautions such as handwashing grossly misrepresents the true medical risks of the treatment and serves to mislead vulnerable patients into consenting to PD under false pretenses.

42. DaVita's claim that "it is a myth that infections are more common with PD" constitutes a serious, material, and potentially deadly misrepresentation. As explained above, infection rates associated with PD are significantly higher—and often more severe—than those associated with clinic-based dialysis. Nevertheless, as described above, DaVita deliberately and deceptively characterizes these well-documented risks as a "myth" in the materials it publishes on its website and distributes directly to patients. By doing so, DaVita seeks to gain patients' trust and reliance while persuading them to transition to PD under false and misleading pretenses.

43. DaVita's coercion tactics go even further. Staff corner Class Members immediately after dialysis sessions, when Class Members are exhausted, lightheaded, or semi-conscious, exploiting them at their most vulnerable. Class Members are rushed through so-called "training," pressured to meet with DaVita PD educators even after declining PD, and bombarded

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

with promotional trinkets like t-shirts and stickers emblazoned with slogans such as "Ask me about home dialysis" and "Home Wherever You Roam." Staff are required to hand patients print publications referenced above, and advise patients to visit DaVita's website to learn more about PD. Staff are required to track patient refusals in logs, turning vulnerable patients into sales quotas rather than human beings in need of care.

44. Each Class Member relied on DaVita's misrepresentations and omissions concerning PD, and was fraudulently coerced into PD through one or more of the foregoing tactics and schemes by DaVita.

45. As a direct and proximate result of Defendants' wrongful conduct, each Class Member has suffered, and continues to suffer, significant harm, including but not limited to peritonitis infection, and the resulted economic and general damages. Class Members contract—peritonitis infection —an infection and inflammation of the lining of the abdominal cavity—resulting from bacterial contamination of the PD catheter or exit site during fluid exchanges.

46. As a result of the foregoing, Class Members have suffered and continue to suffer severe pain and suffering; emotional distress; mental anguish; anxiety; humiliation; loss of enjoyment of life; loss of confidence in their medical providers; compromised health; lesser chances of receiving a kidney transplant; refusal to receive dialysis; and shortened lives. Class Members have also incurred, and will continue to incur, significant medical expenses, costs of corrective procedures, and other consequential damages.

47. DaVita's motive is simple: financial greed. PD delivers far higher margins than in-center treatment.

48. First, PD slashes costs. Because patients perform PD at home, DaVita avoids the significant expenses of in-facility care—salaries for nurses, dietitians, and support staff, as well

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

as building and maintenance costs. PD also consumes fewer medical supplies, further reducing overhead.

49. Second, PD drives revenue. (1) Each time a patient is shifted to PD, an in-center chair opens for another paying patient, expanding DaVita's capacity and billings. (2) Unlike in-center dialysis performed only three times a week, PD is done daily, allowing DaVita to collect reimbursement for seven sessions a week and generate a steady stream of inflated revenue. (3) On top of this, government incentives from the Centers for Medicare & Medicaid Services (CMS) make PD even more financially rewarding.

50. The result is staggering: by coercing patients into PD, DaVita rakes in millions of dollars every year—profits achieved not through better care, but by exploiting vulnerable patients.

51. In sum, DaVita's aggressive promotion and coercion of PD is not about patient choice or improved care—it is about maximizing profits and the expense of Class Members' health. Class Members are deceived, pressured, and placed at risk, while DaVita reaps the financial rewards of its systematic exploitation.

**PLAINTIFF VICTOR SANCHEZ**

52. Plaintiff Victor Sanchez is a victim of DaVita's PD scheme as described above. Plaintiff was deliberately targeted by DaVita as part of its profit-driven campaign to coerce vulnerable patients into PD treatment—regardless of medical appropriateness, safety, or patient well-being.

53. In or around 2015, Sanchez was diagnosed with kidney cancer and underwent surgery that required removal of one kidney. As a result, Sanchez was left with serious kidney issues and required dialysis and ultimately kidney transplant, to maintain and prolong his life. In 2024, Plaintiff went to one of DaVita's clinics in Los Angeles, California, to get dialysis

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

treatment, specifically at DaVita Eaton Canyon Dialysis, located at 2551 E Washington Blvd, Pasadena, CA 91107-1446 ("DaVita Eaton Canyon").

54. Shortly after beginning dialysis, beginning in January-February 2024, DaVita, at the order and supervision of Martinez, began aggressively pressuring Sanchez to abandon in-center dialysis and switch to PD. DaVita staff, nurses, and social workers at DaVita Eaton Canyon, including Nurse Christin Dearo, relentlessly bombarded Sanchez with exaggerated claims and outright falsehoods about PD. Among other things, DaVita minimized, concealed, and misrepresented the substantial dangers of PD to Sanchez, including that PD posed little to no risk of infection, including peritonitis.

55. DaVita staff, nurses, and social workers at DaVita Eaton Canyon, including Nurse Christin Dearo, minimized, concealed, and misrepresented the significant risks associated with PD to Sanchez. Beginning in or about January–February 2024, they falsely represented that PD carried little to no risk of infection, including peritonitis. These statements were repeatedly communicated to Sanchez during his dialysis appointments at DaVita Eaton Canyon. In addition, staff, including Nurse Christin Dearo, orally directed Sanchez to visit DaVita's website (davita.com) for further information regarding PD and its purported benefits.

56. DaVita's conduct was not merely misleading; it was predatory. DaVita staff, nurses, and social workers at DaVita Eaton Canyon, including Nurse Christin Dearo, deliberately targeted Sanchez immediately after his dialysis sessions, when he was physically weak, semi-conscious, and suffering from low blood pressure. They exploited him at his most vulnerable moments to push their sales agenda. Making matters worse, they deliberately scheduled Sanchez's dialysis sessions at 4:00 a.m., ensuring he was further fatigued and susceptible to their coercive tactics.

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

57. Under this sustained pressure and deception, Sanchez felt he had no real choice. Relying on DaVita's false assurances and concealment of the truth, he reluctantly agreed to transition to PD.

58. Once Sanchez began PD, the truth quickly surfaced: DaVita had concealed the very dangers he was now facing.

59. Sanchez contracted peritonitis infection—a severe and life-threatening infection—as a direct result of PD, precisely the risk DaVita had downplayed and dismissed. Sanchez was hospitalized for a week to treat the infection.

60. After continuing PD treatment, Sanchez contracted peritonitis again, requiring another week-long hospitalization.

61. These repeated infections have not only caused economic harm and lasting physical harm but have also significantly reduced Sanchez's eligibility and prospects for a kidney transplant, further jeopardizing his health and future.

62. As a direct result of DaVita's calculated deception, coercion, and concealment of material risks, Plaintiff Sanchez suffered severe and permanent injuries, including physical pain, infection, loss of sleep, emotional distress, and diminished quality of life. He also lost trust in his healthcare providers and continues to suffer ongoing physical and emotional harm.

63. Sanchez's experience is not an isolated incident but part of DaVita's widespread, systematic practice of deceiving and coercing patients into PD treatment to maximize profits. Like Sanchez, countless Class Members are targeted through the same coordinated marketing scheme, subjected to the same false promises, omissions, and high-pressure tactics, and ultimately suffered the same types of harm—including infection, physical pain, emotional distress, and financial loss. DaVita's conduct represents not a series of individual missteps, but a

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

deliberate, company-wide policy of prioritizing revenue over patient safety and wellbeing, implemented through sales executives instead of medical directors.

## CLASS ACTION ALLEGATIONS

64. Plaintiff brings this action on behalf of Plaintiff and Class Members as a class action. Plaintiff seeks to represent a class of all current and former patients of DaVita within California who were deceived and/or coerced into PD through fraudulent and oppressive schemes described in this Complaint, and then suffered from peritonitis resulting from PD as described in this complaint, at any time commencing ten (10) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class.

65. Plaintiff reserves the right to amend or modify the class description with greater specificity, further divide the defined class into subclasses, and to further specify or limit the issues for which certification is sought.

66. This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

### A. Numerosity

67. The potential Class Members as defined are so numerous that joinder of all the members of the Class is impracticable. While the precise number of Class Members has not been determined yet, Plaintiff is informed and believes that there are over two hundred thousand (200,000) Class Members in California who were fraudulently deceived into receiving PD treatment from Defendants and who have, as a result, contracted peritonitis infection.

68. Plaintiff alleges Defendants' PD-treatment records would provide information as to the number and location of all Class Members. Joinder of all members of the proposed Class is not practicable.

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

**B. Commonality**

69. Each Class Member was fraudulently coerced into beginning PD through the tactics and schemes by DaVita described above. Each Class Member was misled as to PD's peritonitis infection rate through concealment by the staff, misrepresentation by the staff, and falsehoods in the print adverting material and DaVita's website.

70. Furthermore, each Class Member suffered from peritonitis infection and sustained significant damages described above because PD was never properly evaluated or determined to be medically appropriate for their individual circumstances. Instead, Defendants indiscriminately pushed PD on Class Members to inflate sales figures and increase profit margins, without conducting any meaningful or individualized assessment of whether PD was safe, effective, or suitable for each Class Member.

71. There are questions of law and fact common to Class Members. These common questions include, but are not limited to:

a) Were Defendants negligent when they refused to disclose all risks and dangers associated with PD, including peritonitis infection risk, to Plaintiff and Class Members?

b) Was DaVita negligent in its hiring and reliance on unqualified managers with no medical backgrounds?

c) Did Defendants violate Cal. Bus. & Prof. Code § 17200 by misleading Plaintiff and Class Members concerning PD and profiting from it?

d) Did Defendants violate Cal. Bus. & Prof. Code § 17500 by distributing misleading marketing materials and making false claims about PD's benefits?

e) Did Defendants make false representations about the benefits of PD and conceal peritonitis infection risks?

f) Did Defendants breach their fiduciary duties to Plaintiff and Class Members by refusing to disclose all risks and dangers associated with PD, including peritonitis infection risk, to Plaintiff and Class Members?

**C. Typicality**

72. The claims of Plaintiff herein alleged are typical of those claims which could be alleged by any Class Members, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions. Plaintiff and Class Members sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of laws and regulations that have the force and effect of law and statutes as alleged herein.

73. Class Members have suffered and continue to suffer severe infection, pain and suffering; emotional distress; mental anguish; anxiety; humiliation; loss of enjoyment of life; loss of confidence in their medical providers; compromised health; lesser chances of receiving a kidney transplant; refusal to receive dialysis; and shortened lives. Class Members have also incurred, and will continue to incur, significant medical expenses, costs of corrective procedures, and other consequential damages.

**D. Adequacy of Representation**

74. Plaintiff will fairly and adequately represent and protect the interest of Class Members. Counsel who represents Plaintiff is competent and experienced in litigating dialysis-related actions.

**E. Superiority of Class Action**

75. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is not practicable, and questions of law and fact common to Class Members predominate over any questions affecting only individual Class Members. Class Members, as further described therein, have been damaged

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

and are entitled to recovery by reason of Defendants' policies and/or practices that have resulted in the violation of California law at times, as set out herein.

76. Class action treatment will allow Class Members to litigate their claims in a manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**FIRST CAUSE OF ACTION**
**Negligence**
**(Against Defendant DaVita Inc.)**

77. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

78. Plaintiff and Class Members are, and at all relevant times have been, patients under the care of Defendants. During their custody of Plaintiff and Class Members to receive dialysis and return home, Plaintiff and Class Members are, and at all relevant times have been, under the care of Defendants who acted as their "primary care medical providers."

79. Defendants owed a duty of ordinary care to the Plaintiff and Class Members, to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful medical professionals would use in the same or similar circumstances.

80. A medical professional is negligent if he or she fails to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful medical professionals would use in the same or similar circumstances.

81. A medical professional acts with willful and wanton misconduct when it acts with absolute and active disregard for the consequences that will likely arise from its actions. "Willful or wanton misconduct is intentional wrongful conduct, done either with a knowledge that serious injury to another will probably result, or with a wanton and reckless disregard of the possible

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

results. (*O'Shea v. Claude C. Wood Co.* (1979) 97 Cal.App.3d 903, 912.) Willful misconduct is "an aggravated form of negligence, differing in quality rather than degree from ordinary lack of care." (*Simmons v. Southern Pac. Transportation Co.* (1976) 62 Cal.App.3d 341, 360.)

82. Here, not only did Defendants fail to use the degree of care that a reasonably prudent medical provider would use, but Defendants also acted with a wanton and reckless disregard of the likely consequences of their actions. In other words, when Defendants failed to provide the care and treatment within the applicable standard of care, they acted with a wanton or reckless disregard of the fact that Plaintiff and Class Members' injuries would likely result from their actions.

83. As a further direct and legal result of the foresaid, Plaintiff and Class Members sustained damages in a sum according to proof at trial.

84. By virtue of the foresaid, Defendants have each acted with intent and recklessness, and their acts and omissions were despicable. By virtue of the foresaid, punitive damages should be assessed against Defendants and each of them, in a sum according to proof at trial.

**SECOND CAUSE OF ACTION**
**Unfair Competition**
**(Against all Defendants)**

85. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

86. Cal. Bus. & Prof. Code § 17200 provides, "[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

87. In order to increase profits and lower costs, Defendants misled Plaintiff and Class Members about the benefits of PD and downplayed the dangers of PD, convincing Plaintiff and Class Members to undergo PD treatment to their detriment.

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

88. Defendants' scheme to mislead Plaintiff and Class Members about PD and profit as a result, constitutes unlawful, unfair, and fraudulent business practices pursuant to Cal. Bus. & Prof. Code § 17200.

89. As a direct and legal result of the foresaid, Plaintiff and Class Members sustained damages in a sum according to proof at trial.

**THIRD CAUSE OF ACTION**
**False Advertising**
**(Against all Defendants)**

90. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

91. Cal. Bus. & Prof. Code § 17500 provides, "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly . . . to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning . . . those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

92. In order to increase profits and lower costs, Defendants distributed misleading marketing materials and slogans concerning PD to Plaintiff and Class Members, and further made false and misleading claims to Plaintiff and Class Members about the benefits of PD.

93. Defendants knew, or by the exercise of reasonable care, should have known, that

their marketing materials, slogans, and claims concerning PD were untrue or misleading.

94. Defendants' distribution of misleading marketing materials, slogans, and false claims concerning PD constitutes a violation of Cal. Bus. & Prof. Code § 17500.

95. As a direct and legal result of the foresaid, Plaintiff and Class Members sustained damages in a sum according to proof at trial.

96. Plaintiff and Class Members seek to recover the statutory remedy of $2,500 per violation.

**FOURTH CAUSE OF ACTION**
**Concealment**
**(Against Defendant DaVita Inc.)**

97. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

98. DaVita owed a fiduciary duty to Plaintiff and Class Members, and thus had a duty to disclose the dangers and harms of PD, and DaVita intentionally failed to fully disclose the dangers and harms of PD to Plaintiff and Class Members.

99. DaVita disclosed perceived advantages and benefits of PD to Plaintiff and Class Members, but intentionally failed to fully disclose the dangers and harms of PD to Plaintiff and Class Members, making the disclosure deceptive.

100. Plaintiff and Class Members did not know of the dangers and harms of PD.

101. DaVita intended to deceive Plaintiff and Class Members by concealing the dangers and harms of PD to gain their reliance and trust, to undergo PD.

102. Had the dangers and harms of PD been fully disclosed, Plaintiff and Class Members reasonably would have behaved differently and not opted for PD treatment.

103. As a direct and legal result of the foresaid, Plaintiff and Class Members sustained damages in a sum according to proof at trial.

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

104. DaVita's concealment was a substantial factor in causing Plaintiff and Class Members' harm.

105. By virtue of the foresaid, DaVita acted with recklessness, oppression, and malice in that it acted in conscious disregard of the of the rights and safety of Plaintiff and Class Members, was despicable, and subjected Plaintiff and Class Members to cruel and unjust hardship. By virtue of the foresaid, punitive damages should be assessed against DaVita, in a sum according to proof at trial.

**FIFTH CAUSE OF ACTION**
**Intentional Misrepresentation**
**(Against All Defendants)**

106. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

107. Defendants represented to Plaintiff and Class Members a list of supposed benefits of PD.

108. Defendants' representations concerning the benefits of PD were false or misleading.

109. Defendants knew that their representations were false when they made it, or they made the representation recklessly and without regard for its truth.

110. Defendants intended that Plaintiff and Class Members rely on their representations.

111. Plaintiff and Class Members reasonably relied on Defendants' representations in undergoing PD.

112. As a direct and legal result of the foresaid, Plaintiff and Class Members sustained damages in a sum according to proof at trial.

113. Plaintiff and Class Members' reliance on Defendants' representations was a substantial factor in causing Plaintiff and Class Members' harm.

114. By virtue of the foresaid, Defendants acted with recklessness, oppression, and

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

malice in that they acted in conscious disregard of the of the rights and safety of Plaintiff and Class Members, were despicable, and subjected Plaintiff and Class Members to cruel and unjust hardship. By virtue of the foresaid, punitive damages should be assessed against Defendants, and each of them, in a sum according to proof at trial.

**SIXTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**(Against All Defendants)**

115. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

116. Defendants represented to Plaintiff and Class Members a list of supposed benefits of PD.

117. Defendants' representations concerning the benefits of PD were false or misleading.

118. Defendants had no reasonable grounds for believing their representations were true when they made them.

119. Defendants intended that Plaintiff and Class Members rely on their representations.

120. Plaintiff and Class Members reasonably relied on Defendants' representations.

121. As a direct and legal result of the foresaid, Plaintiff and Class Members sustained damages in a sum according to proof at trial.

122. Plaintiff and Class Members' reliance on Defendants' representations was a substantial factor in causing Plaintiff and Class Members' harm.

**SEVENTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(Against Defendant DaVita Inc.)**

123. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

124. DaVita, a medical provider, owed fiduciary duties to Plaintiff and Class Members

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

who were its patients.

125. DaVita breached its fiduciary duties to Plaintiff and Class Members by failing to disclose all material facts concerning PD treatment, including PD's dangers and disadvantages.

126. As a direct and legal result of the foresaid, Plaintiff and Class Members sustained damages in a sum according to proof at trial.

127. By virtue of the foresaid, DaVita acted with recklessness, oppression, and malice in that it acted in conscious disregard of the of the rights and safety of Plaintiff and Class Members, was despicable, and subjected Plaintiff and Class Members to cruel and unjust hardship. By virtue of the foresaid, punitive damages should be assessed against DaVita, in a sum according to proof at trial.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, and on behalf of all Class Members, as follows:

1. For an order certifying this case as a Class Action;

2. For an order appointing Plaintiff as Class representative and appointing Plaintiff's counsel as class counsel;

3. For general damages according to proof at trial, no less than one billion dollars;

4. For special damages according to proof at trial, no less than one billion dollars;

5. For an order enjoining ongoing unlawful, unfair, or fraudulent business acts or practices pled in this complaint;

6. For an order requiring the defendant to return moneys was acquired through the unfair, unlawful, or deceptive practices pled in this complaint.

7. For reasonable attorneys' fees;

8. For exemplary and punitive damages according to proof at trial, no less than one billion dollars;

9. For costs of suit incurred herein;

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com

10. For statutory penalties;

11. For civil penalties;

12. For pre-judgment interest;

13. For such other relief as the court deems proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all issues so triable in the Complaint.

DATED: April 23, 2026

**BEROKIM LAW**



-------------------------------------------------------

KOUSHA BEROKIM
DANIEL R. SHOUMER
Attorneys for Plaintiff Victor Sanchez,
on behalf of himself and all others similarly situated

BEROKIM LAW
Attorneys
270 North Cañon Drive, Third Floor, Beverly Hills, California 90210
berokim.com